COMMONWEALTH *vs*. HARLO MAYNE.

No. 93-P-411.

Suffolk. January 5, 1995. - March 23, 1995.

Present: BROWN, JACOBS, & PORADA, JJ.

*Constitutional Law*, Admissions and confessions. *Evidence*, Admissions
and confessions, Consciousness of guilt, Cross-examination, Argument
by prosecutor, Dying declaration. *Practice, Criminal*, Required finding,
Argument by prosecutor, Verdict, Deliberation of jury, Comment by
judge. *Jury and Jurors*.

The judge at a murder trial correctly concluded on the basis of the evi-
dence presented at a hearing on a motion to suppress the defendant's
statements that the statements were not the product of a custodial in-
terrogation and Miranda warnings were not required. [283-284]
At a murder trial, error, if any, in the admission in evidence of certain out-
of-court statements of the defendant created no substantial risk of a
miscarriage of justice. [284]
At a criminal trial, there was no error in the judge's excluding a question
containing an assertion for which no foundation in fact had been laid.
[284-285]
The judge at a murder trial did not err in denying the defendant's motion
for a required finding of not guilty. [285]
Improper remarks by a prosecutor in closing argument expressing personal
belief in the credibility of a witness did not create a substantial risk of a
miscarriage of justice in the context of the argument as whole, the
judge's instructions to the jury, and the evidence at trial. [285-286]
BROWN, J., dissenting.
At a criminal trial, during closing arguments, the judge incorrectly al-
lowed the prosecutor to argue a certain inference that was not sup-
ported by the evidence; however, the error was harmless where the re-
mark was directed to a collateral matter in the case and the judge gave
a clear directive to the jury to disregard the attorneys' beliefs and opin-
ions. [286-287] BROWN, J., dissenting.
At a murder trial, no substantial risk of a miscarriage of justice was cre-
ated by the judge's failure to instruct the jury on the victim's dying
declaration, where the statement in issue was introduced as a prior in-
consistent statement of the witness testifying, thus no instruction was
required; moreover, in the circumstances of the victim's making the
statement, there was little likelihood that the jury would not have found
that the victim believed his death was imminent. [287-288]

At a murder trial, there was no violation of G. L. c. 234, § 34, or coercion of the jury verdict by the judge, where the jury's continuing deliberations were with their assent [288-289], and error, if any, in a gratuitous comment made by the judge was harmless where the jury had been previously instructed that they were not obligated to reach a verdict [289-290].

INDICTMENT found and returned in the Superior Court Department on February 11, 1992.

A pretrial motion to suppress evidence was heard by *James D. McDaniel, Jr.,* J., and the case was tried before him.

*Eileen D. Agnes* for the defendant.

*William Matthew Iler,* Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was convicted of murder in the second degree. On appeal, he raises numerous issues, none of which warrants reversal of his conviction.

1. *Motion to suppress.* The defendant contends that the statements he made to homicide detectives on the night of the murder should have been suppressed because he was not given Miranda warnings before making them. The trial judge denied the motion on the ground that the statements were not the product of custodial interrogation. *Commonwealth* v. *Bryant,* 390 Mass. 729, 736 (1984) (Miranda warnings required only for custodial interrogation). The judge's conclusion was warranted by the evidence and will not be disturbed by this court.

The questioning occurred at the defendant's home; the defendant was interviewed, not as a suspect, but at the scene as part of the police investigation; and the interview was not followed by his arrest. See *Commonwealth* v. *Bryant,* 390 Mass. at 737, 742 n.15; *Breese* v. *Commonwealth,* 415 Mass. 249, 255 (1993) (factors relevant to determining whether interrogation custodial include the place of the interrogation, whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the interviewee, the aggressiveness of the interrogation, and whether

the suspect is free to leave as evidenced by whether the interview terminated with the defendant's arrest).

The defendant also argues that his statements to the detectives should not have been admitted because they were inadmissible hearsay. The defendant made no objection to the introduction of this evidence at trial on this ground. Thus, if any error occurred, the defendant must establish that a substantial risk of a miscarriage of justice occurred. *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987). There was no such risk.

While out-of-court statements of a defendant unequivocally denying guilt are not admissible against a defendant, see *Commonwealth* v. *Pleasant*, 366 Mass. 100, 102 (1974), it is well-settled that false statements made by a defendant are admissible to show consciousness of guilt. *Commonwealth* v. *Lavalley*, 410 Mass. 641, 649 (1991). Here, the defendant told the police that while armed with a bat he had chased an unidentified male out of the house after hearing shots and that he had injured his face in the chase. The jury heard considerable evidence contradicting this story, including that: no other household member saw an intruder; a witness who was parked outside the house during this time saw no one come in or leave the house; no bat was found in the house and blood was found on the landing of the third floor, where the police first observed the defendant, but the shooting occurred on the second floor. As a result, the jury could have inferred that the defendant concocted the story of the intruder, which would render his statement admissible as evidence of consciousness of guilt. *Commonwealth* v. *Walden*, 380 Mass. 724, 731-732 (1980). Further, even if it were error to allow this evidence, given the damaging testimony of the Commonwealth's principal witness against the defendant and other evidence of consciousness of guilt, there was no substantial risk of a miscarriage of justice. *Commonwealth* v. *Perez*, 411 Mass. 249, 260-261 (1991).

2. *Limitation on cross-examination.* The defendant claims that the judge committed error in refusing to allow defense counsel to ask a Commonwealth witness if he remembered

making a statement to a private detective under the pains and penalties of perjury. The prosecutor objected to the question and the judge ruled it was improper because defense counsel knew the statement in question was not a sworn statement. There was no error.

The question was misleading, for it implied that the statement would have subjected the witness to potential prosecution for perjury if it were false when in fact no foundation had been laid to establish this fact. See G. L. c. 268, § 1A. Moreover, any error would have been harmless, because the witness was thoroughly cross-examined in regard to the statement and admitted that he certified the statement as true and complete.

3. *Required finding of not guilty.* The defendant argues that the judge erred in denying his motion for a required finding of not guilty at the close of the Commonwealth's case. In making this argument, the defendant discounts the testimony of the Commonwealth's principal witness who testified that the victim was engaged in a struggle with the defendant before his death, that the victim made a dying declaration implicating the defendant and that he overheard the defendant telling his mother that he shot the victim and disposed of incriminating evidence. While this witness was impeached by his own conflicting statements as well as by other evidence, the credibility and weight to be attached to his testimony was an issue for the jury alone to decide and a required finding of not guilty was inappropriate. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 377 (1978).

4. *Prosecutor's closing argument.* The defendant contends that two segments of the prosecutor's argument were improper and so prejudicial as to mandate reversal of his conviction. His first complaint involves the prosecutor's statements that vouched for the credibility of the principal witness for the Commonwealth. The prosecutor told the jury that the witness was "[a] man who would probably do anything to keep from being in the position he was put in, being the only person coming forward to tell the truth as to what happened . . . ." He also referred to him as "a hero for

coming forward and going through what he did to tell you what happened . . . ." The defendant made no objection to these remarks and did not request a curative instruction. As a result, we review the remarks to determine if they created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993).

We have repeatedly held that a prosecutor is not permitted to comment on his or her personal belief in the credibility of a witness. *Commonwealth* v. *Stone*, 366 Mass. 506, 516 (1974). *Commonwealth* v. *Nicholson*, 20 Mass. App. Ct. 9, 17-18 (1985). While the remarks were improper, we conclude that they did not create a substantial risk of a miscarriage of justice when the prosecutor's remarks are evaluated in the context of his argument as a whole, the judge's instructions to the jury, and the evidence at trial. *Commonwealth* v. *Kozec*, 399 Mass. 514, 517-518 (1987). *Commonwealth* v. *Marquetty*, 416 Mass. at 450. The witness in question was the key witness for the Commonwealth and had serious credibility problems. Five other witnesses who were in the house at the time of the incident did not corroborate his testimony. However, the credibility of those five other witnesses was also subject to question. In his argument the prosecutor stressed that it was the role of the jury to determine the credibility of the witnesses and gave the jury reasons to believe this witness' testimony and to disbelieve the other five witnesses' testimony based on the evidence before them. The jury also had the benefit of clear and precise instructions from the judge who gave them sua sponte immediately after the prosecutor's argument. The judge admonished the jury that they were to disregard the prosecutor's remark labelling the witness as a hero and that his testimony was to be assessed in the same manner as any other witness. The judge also told the jury at that time that lawyers are not allowed to express their opinions and beliefs on any issue in the case and they were to disregard any such references.

The second segment of the prosecutor's argument at issue is his statement "[a]nd I suggest to you that this lady sitting in the back of the room, Dorrett English, has instructed, has

been the main mover behind keeping these other people quiet about what happened that night." Defense counsel objected but the judge overruled the objection. At the close of the prosecutor's argument, the defendant renewed his objection but the judge overruled it again, saying that inferences could be drawn from the evidence to support this argument.

We summarize the evidence presented to the jury that might be construed to support this argument. Dorrett English was the defendant's mother; all the witnesses referred to by the prosecutor resided in her home and were related to her and the defendant; only one of them paid her rent; and she arranged for all of them to be interviewed by the private detective hired to investigate the matter on behalf of her son. While it is a close question, we disagree with the judge that this evidence is sufficient to support an inference that she was the ringleader behind a coordinated effort for the family to perjure themselves on the stand to save the defendant. Nevertheless, we consider the prosecutor's remarks harmless error. The remark was directed to a collateral matter in the case. *Commonwealth* v. *Shelley*, 374 Mass. 466, 470-471 (1978). This fact, coupled with the judge's clear directive to the jury to disregard the attorneys' beliefs and opinions, see *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 250-251 (1988), rendered the statement harmless error.

5. *Admissibility of dying declaration.* The defendant argues that the trial judge erred in failing to instruct the jury that, before they could consider as evidence the statement of the victim identifying the defendant as the person who shot him, they must first find that he believed his death was imminent when he made the statement. *Commonwealth* v. *Polian*, 288 Mass. 494, 496 (1934). Since the defendant did not request this instruction at trial, our review is based on whether the omission of this instruction created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 561-564 (1967). There was none, for the statement was introduced by the prosecution as a prior inconsistent statement of its own witness and defense counsel, although fully apprised of this fact, did not request a limiting

instruction. Consequently, there was no need for an instruction. Further, the victim made the statement after he was shot seven times, lay bleeding on the floor, and said he was dying. In those circumstances, there is little likelihood that the jury would not have found that the victim believed death was imminent. See *Commonwealth* v. *Key*, 381 Mass. 19, 25 (1980) (declarant's sense of impending death may be inferred from the character of the injury).

6. *Jury deliberations.* The defendant contends that his conviction must be reversed because the judge coerced the jury into rendering a verdict. His argument is twofold. He first contends that the judge coerced the verdict by sending the jury back to deliberate without their consent after they had twice reported that they were deadlocked. See G. L. c. 234, § 34.

Based upon our review of the record, we do not consider the judge's action coercive of a jury verdict. On the first occasion the jury reported it was deadlocked, the judge determined that the jury had not made due and thorough deliberation. He noted that the jury had been deliberating for approximately four hours after a trial that lasted five days and involved complex issues and lengthy testimony. He sent the jury back to deliberate, but upon further discussion with counsel, he called the jury back and informed them they were not obligated to reach a verdict in the case, but that they should make a reasonable effort to do so. At the end of the day, the jury filled out a form for the judge on which they indicated they could not resolve the issues in the next hour and wanted to adjourn for the day. On the following day, the jury began deliberating at 9:00 A.M. During that day, they sent a note to the judge saying that they were deadlocked. The judge brought the jury in and told the jury that in instances like this he was obliged to give them a further instruction, but because of the lateness of the day he would dismiss them and give them the instruction in the morning. When the jury returned the following morning the judge gave the jury a *Rodriquez* instruction. See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973). At 4:00

P.M. on that day the judge sent a form to the jury asking if they wanted to suspend deliberations for the day and whether there had been any movement. The jury indicated that there had been movement, but that they wanted to suspend deliberations for the day. Upon their return the following day, after asking for further instructions on the degrees of murder, the jury returned a verdict of guilty of murder in the second degree. In these circumstances, we conclude neither the letter nor spirit of G. L. c. 234, § 34, was violated. See *Commonwealth* v. *Jenkins*, 416 Mass. 736, 738-741 (1994). The judge did not abuse his discretion in deciding that approximately four hours of deliberation after a five-day trial which involved complex issues, lengthy testimony and forty exhibits did not constitute due and deliberate consideration. See *Commonwealth* v. *Valliere*, 366 Mass. 479, 496 (1974) (judge was warranted in concluding that jury's deliberation was not "due and thorough" although jury had deliberated for thirteen hours). As such the jury's first return did not count as a return for the purposes of G. L. c. 234, § 34. *Commonwealth* v. *Winbush*, 14 Mass. App. Ct. 680, 682-683 (1982). Consequently, the second time that the jury reported its deadlock was the only return to implicate § 34. Thereafter, the jury deliberations continued with their assent.

The defendant's second argument is based on a comment the judge made prior to giving the *Rodriquez* charge. He told the jury that their deadlock was "not an unusual position . . . [i]t happens with many, many juries and I might say it probably happens eighty-five percent of the time." The comment was gratuitous but not coercive. The jury had previously been instructed by the judge that they were not obligated to reach a verdict. In those circumstances, any error was harmless. See *Commonwealth* v. *Jenkins*, 416 Mass. at 740 (judge's statement that, after jury made their decision on whether they wanted to stop deliberating, he would make

his decision was not coercive when jury knew they had the option of discontinuing deliberations).

*Judgment affirmed.*


BROWN, J. (dissenting). Because trial prosecutors refuse to "clean up their act," I dissent for the reasons stated in *Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 501-504 (1994) (Brown, J., dissenting). See also *Commonwealth* v. *Kines*, 37 Mass. App. Ct. 540, 544 (1994) (Brown, J., concurring).

A further comment, however, is appropriate. Ethical responsibilities are no different for the defense than for the prosecution. See S.J.C. Rule 3:07, Canon 7, DR 7-102(A), 382 Mass. 785 (1981). Here defense counsel crossed the line when he improperly asked a misleading question. This was a blatant attempt to confuse and to communicate unfounded impressions by innuendo. Cf. *Commonwealth* v. *Fordham*, 417 Mass. 10, 20-21 (1994), and authorities cited.

Judges do not like slick conduct, and certainly abhor unethical conduct. The trial judge would have been well warranted in imposing sanctions on defense counsel. See S.J.C. Rule 3:08, DF 1, 382 Mass. 803 (1981). All counsel are officers of the court: "gamesmanship" on both sides must stop. Defense counsel, like prosecutors, must take care to behave themselves. See *Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983). See also *Commonwealth* v. *Tirrell*, 382 Mass. 502, 513 (1981) (Kaplan, J., dissenting).