**Harlo MAYNE, Petitioner,**

v.

**Timothy HALL, Respondent.**

**No. CIV. A. 00–11209–RGS.**

United States District Court,
D. Massachusetts.

Nov. 15, 2000.

Harlo Mayne, Norfolk, MA, pro se.

William J. Meade, Asst. Atty. General Criminal Bureau, Boston, MA, for Defendant.

## ORDER

STEARNS, District Judge.

I *ADOPT* the thorough and well-reasoned Report and Recommendation of the Magistrate/Judge.

SO ORDERED.

## REPORT AND RECOMMENDATION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 8)

BOWLER, United States Magistrate Judge.

Respondent Timothy Hall ("respondent")[1] moves to dismiss the above styled

1. By letter dated August 10, 2000, petitioner Harlo Mayne ("petitioner"), an inmate incarcerated at the Massachusetts Correctional Institution in Norfolk, Massachusetts ("MCI–Norfolk"), requested that this court change the name of respondent Larry E. DuBois, former Commissioner of the Department of Correction, to Timothy Hall, Superintendent of MCI–Norfolk. On Augsut 18, 2000, this court substituted Timothy Hall as respondent in lieu of Larry E. DuBois. On August 21, 2000, counsel for respondent Larry E. DuBois, having not received the August 18 Order, sought substitution of Michael T. Maloney, Commissioner of the Department of Correction, as the proper respondent in

petition for writ of habeas corpus as untimely under 28 U.S.C. § 2244(d) ("section 2244(d)") of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").[2] Petitioner attacks his 1992 conviction in Massachusetts Superior Court Department (Suffolk County) ("the trial court") for second degree murder on the grounds of: (1) ineffective assistance of trial and appellate counsel;[3] (2) improper restriction of the cross examination of the prosecution's chief witness; (3) prosecutorial misconduct during closing argument; and (4) incorrect jury instructions. (Docket Entry 1 & 7).

## BACKGROUND

On February 11, 1992, a grand jury in Suffolk County, Massachusetts, returned an indictment charging petitioner with first degree murder. After a five day trial and four days of deliberations, the jury found petitioner guilty of the lesser included offense of murder in the second degree. Petitioner received a life sentence. *See Commonwealth v. Mayne*, 38 Mass.App. Ct. 282, 647 N.E.2d 89, 94 (1995).

On June 15, 1992, petitioner filed a timely notice of appeal. On June 24, 1993, before the Massachusetts Appeals Court ("the appellate court") issued a ruling on the direct appeal, petitioner filed a motion for a new trial. On August 17, 1994, after conducting a hearing and taking the motion under advisement, the trial judge denied the motion for a new trial.

On September 8, 1994, petitioner filed an appeal of the denial of the motion for a new trial. The appellate court affirmed the trial court's ruling on March 14, 1997. *Commonwealth v. Mayne*, 42 Mass.App. Ct. 1110, 677 N.E.2d 719 (1997). On April 28, 1997, the Massachusetts Supreme Judicial Court ("the SJC") denied petitioner's appeal of the appellate court's decision affirming the trial court's denial of the new trial motion. *Commonwealth v. Mayne*, 424 Mass. 1108, 679 N.E.2d 558 (1997).

Returning to petitioner's direct appeal, on March 23, 1995, the appellate court affirmed the conviction. *Commonwealth v. Mayne*, 38 Mass.App.Ct. 282, 647 N.E.2d 89 (1995). On September 6, 1995, the SJC denied petitioner's application for leave to obtain further appellate review. *Commonwealth v. Mayne*, 421 Mass. 1101, 654 N.E.2d 1202 (1995).

From late 1995 to the middle of 1996 petitioner mailed various trial transcripts and filings from the state court proceedings to his mother. Petitioner's legal documents exceeded the limit prison officials allowed an inmate to retain thereby causing petitioner's mailings to his mother. In an attempt to prepare a second motion for a new trial after the SJC's April 28, 1997 denial of the first motion for a new trial,

---

place of Larry E. DuBois. Although Rule 25(d)(1), Fed.R.Civ.P., provides for such substitution, it is unnecessary inasmuch as Timothy Hall is a proper respondent as the state officer in charge of the penal institution wherein petitioner is currently housed. *See* Rule 2(a), 28 U.S.C.A. foll. § 2254; *see also* Advisory Committee Notes, 1976 Adoption, Rule 2(a), 28 U.S.C.A. foll. § 2254 (if habeas applicant is presently in custody, proper respondent is "state officer having custody of the applicant" which "in the usual case is either the warden of the institution in which the petitioner is incarcerated or the chief officer in charge of state penal institutions").

2. On July 28, 2000, this court ordered respondent to file an answer. In lieu of filing an answer, respondent filed the present motion

to dismiss and requested an additional 30 days to answer the petition in the event this court denied the motion. (Docket Entry # 9). On September 14, 2000, this court notified the parties that it would construe the motion to dismiss as a motion for summary judgment and allowed the parties up to October 10, 2000, to file any additional documentation. (Docket Entry # 14).

3. Petitioner raises the ineffective assistance of trial and appellate counsel in ground one of the original petition and in ground five of the original petition as amended. These two grounds set forth the various reasons for counsel's ineffectiveness. For present purposes only in light of the basis for the motion to dismiss, this court groups the two grounds together. (Docket Entry 1 & 7).

petitioner asked his mother to return the trial transcripts and a number of other court documents. Unfortunately, petitioner's mother was unable to understand petitioner's instructions and, in addition to other factors, injuries made it difficult for her to retrieve the documents.[4] Petitioner also requested copies of the documents from his former counsel who also delayed in sending such documents to petitioner. Accordingly, it was not until March 16, 1998, that petitioner filed a second motion for a new trial.[5]

On July 3, 1998, the trial court denied the *pro se* motion. On August 10, 1998, petitioner filed a timely appeal. On July 27, 1999, the appellate court affirmed the trial court's denial of the second motion for a new trial. *Commonwealth v. Mayne*, 47 Mass.App.Ct. 1111, 715 N.E.2d 477 (1999). The SJC denied petitioner's appeal therefrom on October 27, 1999. *Commonwealth v. Mayne*, 720 N.E.2d 469 (Mass.1999).

Petitioner's attempts to file the present petition began in November 1999. In particular, on November 12, 1999, petitioner sent a letter to the clerk of the United States District Court for the District of Massachusetts asking whether he was procedurally barred from filing a federal habeas petition. The clerk stamped the letter "filed" with a date stamp of November 17, 1999, and returned the letter to petitioner with a list of lawyer referral services operated in Boston. Petitioner not only sent the November 12 letter to the court's former address at Post Office Square but the lawyer referral list also contained the incorrect, former address of the court as located at 90 Devonshire Street in Post Office Square.[6]

On November 23, 1999, petitioner completed the first petition and placed it inside a stamped envelope with the incorrect Post Office Square address. By cover letter, petitioner asked the clerk to file the petition and application to proceed in forma pauperis. Petitioner also asked the clerk to advise him if he needed to complete an additional form and noted that he was in the process of preparing a supporting memorandum which he would mail within a few weeks.

The first petition attacks the same 1992 conviction for second degree murder and resulting life sentence. Therein, petitioner raises grounds similar to those brought in the present petition.[7]

Not having heard back from the court for three months, on February 25, 2000, petitioner wrote a letter of inquiry to the clerk, again using the incorrect Post Office Square address. He received no reply.

Accordingly, on June 6, 2000, petitioner executed the present petition and on June 14, 2000, sent it to the incorrect Post Office Square address by certified mail. Petitioner alleges that the letter containing the petition was returned unopened with

---

4. Petitioner avers that his mother's apartment was under renovation and that his mother stored the documents under other household items.

5. Prior thereto, petitioner attempted to file the motion for a new trial on or after March 6, 1998, by sending the motion, a motion for an evidentiary hearing and certain exhibits directly to the trial court's clerk's office. The cover letter is dated March 6 and petitioner's affidavit attests that he sent the motion and supporting documents to the trial court's clerk's office on March 6. Inasmuch as petitioner's attempt to file this motion was no earlier than March 6, this court need not determine whether the filing date for the second motion for a new trial should be the earlier March 6 date as opposed to the later March 16 date reflected on the state court docket sheet. Using either date would not change the outcome or reasoning of this opinion. Consequently, this court need not detail petitioner's efforts.

6. The court moved to the present location more than one year earlier in September 1998.

7. Specifically, the first petition claims that petitioner was denied effective assistance of trial and appellate counsel. It also alleges improper restriction of the cross examination of one of the prosecution's essential witnesses, prosecutorial misconduct during closing argument and improper jury instructions.

the notation "incorrect address." At this point, petitioner realized the mistake and remailed the petition to the correct address at 1 Courthouse Way on or about June 17, 2000. On June 20, 2000, the *pro se* petition was filed and docketed. Although this court assumes petitioner used MCI–Norfolk's internal mail system in November 1999 and June 2000, it is unclear whether this system maintains an internal recording of outgoing legal mail.

## DISCUSSION

Prior to the AEDPA's enactment, "a prisoner faced no strict time constraints in filing a petition for writ of habeas corpus." *Villegas v. Johnson*, 184 F.3d 467, 468 (5th Cir.1999). The AEDPA altered these circumstances by imposing a one year limitations period for habeas petitions. *See* 28 U.S.C. § 2244(d)(1). For habeas challenges to state convictions which became final prior to the AEDPA's April 24, 1996 enactment, this circuit affords petitioners a one year grace period running from April 24, 1996. *See Gaskins v. Duval*, 183 F.3d 8, 9 (1st Cir.1999) (applying the reasoning and the one year grace period applicable to section 2255 motion in *Rogers v. United States*, 180 F.3d 349, 351–352 (1st Cir.1999), *cert. denied*, 528 U.S. 1126, 120 S.Ct. 958, 145 L.Ed.2d 831 (2000), to Gaskins' section 2254 petition). As reasoned in *Rogers*, a conviction becomes final for purposes of applying the grace period when the Supreme Court denies an application for certiorari. *Rogers v. United States*, 180 F.3d at 352. Where, as here, petitioner did not seek certiorari, the conviction becomes final no later than

the expiration of the 90 day period for filing a petition for certiorari, *see* Sup.Ct. Rule 13, a time period prior to the April 24, 1996 enactment of the AEDPA.[8] The one year grace period established in *Gaskins* therefore applies. Absent tolling, the one year period began to run on April 25, 1996, the day after the AEDPA's enactment. *See Gaskins v. Duval*, 183 F.3d at 9 (recognizing that one year period began to run "on April 25, 1996, the day after AEDPA's enactment"); *see also* Rule 6(a), Fed.R.Civ.P.; *Flanagan v. Johnson*, 154 F.3d 196, 201–202 (5th Cir.1998) (applying Rule 6(a) to calculation of AEDPA's one year grace period).

Under section 2244(d)(2), petitioner receives the benefit of a provision which tolls the one year period during the time a "properly filed" post-conviction state application for collateral review is "pending." 28 U.S.C. § 2244(d)(2); *Gaskins v. Duval*, 183 F.3d at 9–10 (applying section 2244(d)(2) tolling provision to section 2254 petition involving conviction which became final prior to April 24, 1996). Unfortunately, the First Circuit in *Gaskins* did not elaborate upon what state filings constitute "properly filed applications" under section 2244(d)(2) and whether such filings remain "pending" between the time a state court denies a post-conviction motion and the time a petitioner files an appeal or the time to file such an appeal expires under state procedural rules.[9] There is also a dearth of case law in this circuit regarding whether a state post-conviction motion remains "pending" after the state's highest court renders a decision for the 90 day period in which a petitioner may apply for certiorari with the Supreme Court.[10] Ac-

---

8. Petitioner's conviction became final 90 days after the SJC denied petitioner's direct appeal on September 6, 1995, i.e., December 6, 1995. Inasmuch as either September 6 or December 6, 1995, falls before the AEDPA's April 24, 1996 enactment date, this court need not determine whether to count the period for seeking certiorari where, as here, the petitioner did not appeal the highest state court's decision.

9. Accordingly, this court must determine whether the first motion for a new trial was "properly filed" and "pending" at the time of the AEDPA's enactment. It is also necessary to determine whether the first and second motions for a new trial remained "pending" after the trial court or appellate courts ruled on the motions and before petitioner filed appeals therefrom.

10. Petitioner did not seek certiorari after the SJC's April 28, 1997 denial of the appeal

cordingly, this court turns to the language and purpose of the statute and appellate cases outside the First Circuit for guidance.

Section 2244(d)(2) excludes the time period during which a petitioner seeks state collateral review from the one year grace period with the following language:

> The time period during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added).

The exclusion of this time period comports with principles of comity and encourages a petitioner to "first exhaust his state court remedies before seeking federal habeas relief." *Gaskins v. Duval*, 183 F.3d at 10; *accord Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir.1999) (tolling "entire period of state proceedings" under section 2244(d)(2) "upholds 'the principle of comity that underlies the exhaustion doctrine'"), *cert. denied,*, —— U.S. ——, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000). In particular, consistent with the requirement that a petitioner exhaust state court remedies, section 2244(d)(2) tolls the period during which the petitioner is attempting to exhaust such remedies in the state court system. *See Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir.1999) (excluding all of the time during which properly filed application for post-conviction relief is pending is consistent with "requirement that state prisoners first exhaust all available state court remedies"). Section 2244(d)(2) thereby promotes comity by allowing "state courts to have the unfettered first opportunity to review the prisoner's claim and to provide any necessary relief." *Nino v. Galaza*,

183 F.3d 1003, 1007 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1846, 146 L.Ed.2d 787 (2000).

Turning to whether the motions for a new trial, presumably filed under Rule 30, Mass. R.Crim. P., were "properly" filed, "Neither AEDPA nor its legislative history explains which state filings qualify as properly filed applications." *Villegas v. Johnson*, 184 F.3d at 470. Nevertheless, "The majority of courts that have considered this issue have concluded that 'a properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place for filing.'" *Villegas v. Johnson*, 184 F.3d at 470 (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998)).

■ Case law distinguishes between a state collateral application which requires leave of court to file the collateral motion and, accordingly, does not trigger tolling until the court allows the motion for leave,[11] *see, e.g., Tinker v. Hanks*, 172 F.3d 990, 991 (7th Cir.1999), *petition for cert. filed*, (U.S. Dec. 27, 1999) (No. 7682), and a state collateral application which allows for the filing of the collateral motion, for example, a second successive petition, which the court usually dismisses on procedural grounds, but which nevertheless triggers tolling under section 2244(d)(2). *See, e.g., Villegas v. Johnson*, 184 F.3d at 470–471 (refusing to consider successive state application or one containing procedurally barred claim as improperly filed as long as the state allows the filing). For instance, if a petitioner complies with the time limits imposed on the motion under the state's statutory procedure or rules, the fact that the court later denies the motion as procedurally barred or meritless does not prevent the motion from being "properly filed" under section 2244(d)(2). *See Lo-*

---

regarding the first motion for a new trial or after the SJC's October 27, 1999 denial of the appeal regarding the second motion for a new trial. Consequently, this court must assess whether to toll the 90 day period following these SJC decisions.

11. Such a construction recognizes that Congress used the word "filed" to refer to the post-conviction application.

*vasz v. Vaughn,* 134 F.3d 146, 148–149 (3rd Cir.1998); *see, e.g., Williams v. Cain,* 217 F.3d 303, 306–307 (5th Cir.2000) (state collateral application for supervisory writ, which must be filed within 30 days under state law, was not "properly filed" because the petitioner filed it 14 months after expiration of the 30 day time limit);[12] *Villegas v. Johnson,* 184 F.3d at 470–471 (inasmuch as Texas did not place any time or numerosity limit on successive state petitions such petitions are "properly filed" and toll grace period); *but see Dictado v. Ducharme,* 189 F.3d 889, 891–892 (9th Cir. 1999) (filing of fourth state successive petition, which Washington Supreme Court considered time-barred, did not toll one year grace period). In short, as explained by the court in *Williams,* if the state statute does "not prohibit the filing of a successive petition, but merely limit[s] the availability of relief, the statute [does] not impose a 'procedural filing requirement' that would make an application improperly filed for the purpose of section 2244(d)(2)." *Williams v. Cain,* 217 F.3d at 306.

Comity is therefore served by the federal court not intruding on the state court system and examining the merits of the state collateral motion. As noted by the Fifth Circuit in *Villegas,* the "AEDPA evinces no congressional intent to embroil federal courts in problematic determinations of the merit of state court filings." *Villegas v. Johnson,* 184 F.3d at 471.

■ Applying the foregoing case law to petitioner's state collateral proceedings, the first Rule 30 motion for a new trial was properly filed because the state statute does not prohibit the filing and, indeed, does not set a time limit. *See* Rule 30,

Mass. R.Crim. P. As to the second motion for a new trial, it is true that courts rarely grant such motions. Nevertheless, the state statute expressly gives the judge the discretion to consider grounds raised in a second motion and does not set a time limit in which to file a subsequent Rule 30 motion. *See* Rule 30(c)(2). The second motion for a new trial under Rule 30 was therefore "properly filed" within the meaning of section 2244(d)(2). *See, e.g., Lovasz v. Vaughn,* 134 F.3d at 149 (second motion for post-conviction relief, filed according to the procedural rules of state statute which allow filing, was "properly filed" under section 2244(d)(2) even though courts only "occasionally grant relief in such proceedings").

To state the obvious, the first motion for a new trial was "pending" at the time the AEDPA took effect on April 24, 1996.[13] *See, e.g., Guenther v. Holt,* 173 F.3d 1328, 1331 (11th Cir.1999) (state post-conviction motion properly filed in July 1995 and still pending when AEDPA took effect remained pending until state appeals court denied motion in January 1997 and state supreme court denied certiorari in July 1997), *cert. denied,* 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000); *Belle v. Varner,* 2000 WL 274011 at * 1 (E.D.Pa. March 10, 2000) (because post-conviction motion was pending on April 24, 1996, "one-year limitation period did not begin to run until this ... proceeding had ended"); *Sorce v. Artuz,* 73 F.Supp.2d 292, 296–297 (E.D.N.Y.1999) (due to pending state court post-conviction petition, one year period did not begin to run until state appellate court denied petition on December 9, 1996). Section 2244(d)(2) therefore tolled the one year grace period until the

---

**12.** Furthermore, if the state procedure or rules set a time limit but also include a number exceptions to the time limit thereby allowing a court the discretion to consider an untimely collateral motion, the motion is considered "properly filed" and tolls the grace period. *See Williams v. Cain,* 217 F.3d at 306.

**13.** At the time the AEDPA took effect, petitioner had properly filed an appeal of the denial of the first motion for a new trial and was awaiting a decision by the appellate court. The appellate court did not affirm the trial court's denial until March 14, 1997. Thereafter, petitioner continued to exhaust his state court remedies by seeking review with the SJC. On April 28, 1997, the SJC denied petitioner's appeal.

first motion for a new trial was no longer "pending" within the meaning of section 2244(d)(2).

■ The issue then arises as to whether to include the period during which petitioner prepared but had not yet filed the appeals to the appellate court and the SJC.[14] Stated otherwise, does the term "pending" in section 2244(d)(2) only include the time period during which the post-conviction motion remains unresolved by the appellate court and the SJC. The First Circuit in *Gaskins* left this an open question. *See Gaskins v. Duval*, 183 F.3d at 10 n. 2.

The majority of circuit courts, as well as a court in this district, do not adhere to a so-called "gap theory" by counting, as part of the one year grace period, the time period between the denial of a state post-conviction motion and the petitioner's filing of an appeal within the state court system. *See Taylor v. Lee*, 186 F.3d 557, 561 & n. 3 (4th Cir.1999), *cert. denied*, —— U.S.——, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000); *Killela v. Hall*, 84 F.Supp.2d 204, 207 & 211–212 (D.Mass.2000) ("several courts of appeal have ruled, consistently, that a properly filed application for collateral review is indeed 'pending' during the time period that the state appeal petition is being prepared"). In particular, the second, third, fourth, ninth, tenth and eleventh circuits conclude that a state post-conviction petition remains "pending" during the time between a state court's decision and the filing of a further appeal to a higher state court. *See Swartz v. Meyers*, 204 F.3d 417, 420 (3rd Cir.2000); *see Adeline v. Stinson*, 206 F.3d 249, 251–252 (2d Cir.2000); *Taylor v. Lee*, 186 F.3d at 559–561; *Nino v. Galaza*, 183 F.3d at 1005–1007; *Guenther v. Holt*, 173 F.3d at 1331; *Barnett v. Lemaster*, 167 F.3d at 1323.[15] In the event the petitioner does not file a timely appeal, a number of courts further conclude that the state petition remains "pending" until expiration of the time period for such an appeal under state law. *See Swartz v. Meyers*, 204 F.3d at 421–424 (collecting cases).

Such a construction adheres to the common usage or definition of the word "pending" which includes " 'begun, but not yet completed' " or " '[A]waiting an occurrence or conclusion of action.' " *Swartz v. Meyers*, 204 F.3d at 421 (quoting definition of "pending" used in *Black's Law Dictionary* (6th ed.1990), as reflecting common usage of that term); *accord Barnett v. Lemaster*, 167 F.3d at 1323. It also upholds the principle of comity underlying the exhaustion doctrine. *Taylor v. Lee*, 186 F.3d at 561. In particular, counting the intervals between disposition and appeal might require petitioners to file a federal petition prematurely prior to their complete exhaustion of state court reme-

---

**14.** See footnote number nine.

**15.** Neither the Ninth Circuit in *Nino* nor the Second Circuit in *Adeline* addressed the issue of whether to toll the period under section 2244(d)(2) between the time the state's highest court issued a ruling on the post-conviction motion and the time period to petition for certiorari review with the Supreme Court expired. *Adeline v. Stinson*, 206 F.3d at 251–252; *Nino v. Galaza*, 183 F.3d at 1005–1007. The Third Circuit in *Swartz* did not find it necessary to address the issue of whether to include the 90 day time period in which the petitioner could seek certiorari review with the Supreme Court in calculating the grace period under section 2244(d)(2). *Swartz v. Meyers*, 204 F.3d at 422 n. 5. Likewise, the Fourth Circuit in *Taylor* declined to address the issue of whether to toll the additional period during which Taylor sought certiorari review from the Supreme Court pursuant to section 2244(d)(2). *Taylor v. Lee*, 186 F.3d at 558 n. 1. The Eleventh Circuit in *Guenther* did not discuss the time period for seeking review by certiorari with the Supreme Court when it found that Guenther's petition for post-conviction relief remained pending under section 2244(d)(2) until the state's highest court denied review. Similarly, the Tenth Circuit in *Barnett* did not discuss counting the time period for the petitioner to seek certiorari review with the Supreme Court when it found that the petition no longer remained "pending" under section 2244(d)(2) after the day the state supreme court denied certiorari review. *Barnett v. Lemaster*, 167 F.3d at 1322–1323.

dies. *See Sorce v. Artuz,* 73 F.Supp.2d at 297–298 (section 2244(d)(2) tolling "during state court post-conviction relief is to encourage the swift exhaustion of state court remedies and to allow the state courts to address constitutional issues in the first instance"). Encouraging petitioners to exhaust state court remedies is also better served by not counting the time for seeking discretionary appellate review in the state court system, whether or not such review is sought. *See Swartz v. Meyers,* 204 F.3d at 421–423.

■ Adhering to this case law, the first motion for a new trial remained "pending" within the meaning of section 2244(d)(2) during the entire period from April 25, 1996, until the SJC issued its decision on April 28, 1997. Thereafter, no state post-conviction or other collateral review proceeding was pending until petitioner filed the second motion for a new trial on March 16, 1998, a period of 321 days.[16] *See Nino v. Galaza,* 183 F.3d at 1006 (recognizing that no section 2244(d)(2) tolling occurs "from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval"); *see, e.g., Belle v. Varner,* 2000 WL 274011 at * 1–2 (E.D.Pa. March 10, 2000) (under section 2244(d)(2), grace period began to run after 30 day time to appeal superior court's denial of first post-conviction motion expired and grace period began to run again after state's highest court denied second post-conviction motion); *Sorce v. Artuz,* 73 F.Supp.2d at 296–297 (beginning to count one year grace period after appellate court denied post-conviction application on December 9, 1996, even though the petitioner subsequently filed another motion for post-conviction relief on August 20, 1998); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.

1997) (counting period between denial of sixth state post-conviction motion and filing of seventh state post-conviction motion). Between the time the SJC denied the first motion for a new trial and the time petitioner filed the second motion for a new trial, petitioner was making little, if any, attempt to exhaust state court remedies. Moreover, tolling this intermediate period would allow petitioners the opportunity to reset the limitations clock by the simple expedient of filing a motion for reconsideration or another motion for a new trial years after the denial of a post-conviction motion. It would not serve the principle of exhaustion underlying section 2244(d)(2) and would defeat the purpose of the AEDPA time limit.

Pursuant to section 2244(d)(2), the one year grace period therefore resumed on October 28, 1999, the day after the SJC denied petitioner's appeal of the appellate court's affirmation of the trial court's denial of the second new trial motion. With 321 days already elapsed, the one year grace period expired 44 days later on December 10, 1999.

■ Although the issue is one of first impression in this circuit, the tolling provision of section 2244(d)(2) does not include the 90 days in which a petitioner seeking state collateral review can petition for a writ of certiorari from the Supreme Court after the state's highest court issues a decision. "Every appellate court that has considered section 2244(d)(2)'s effect on [a petition for writ of certiorari] concluded that there is no tolling." *Jiminez v. Rice,* 222 F.3d 1210, 2000 WL 1180557 at * 3 (9th Cir. Aug.22, 2000). The reasoning for this conclusion is threefold.

First, section 2244(d)(1)(A), the provision applicable to determining the commencement of the limitations period on

---

16. Although not outcome determinative, the one year period began to run on the day after the April 28, 1997 decision. *See* Fed.R.Civ.P. 6(a) (excluding day of court's decision from time period calculation); *see also Flanagan v. Johnson,* 154 F.3d 196, 201–202 (5th Cir.

1998) (applying Rule 6(a) to calculation of AEDPA's one year grace period). Using 1997 and 1998 calendars, 321 days elapsed from April 29, 1997 up to and including March 15, 1998.

direct review, uses language that the period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[17] In contrast, section 2244(d)(2) contains no such provision regarding the expiration of the time for seeking review. "It is a fundamental tenet of statutory construction that Congress intended to exclude language included in one section of a statute, but omitted from another section." *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.1999) (finding that section 2244(d)(2) does not toll the period for seeking certiorari from Supreme Court), *cert. denied*, — U.S. —, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000).

Second, the word "State" in section 2244(d)(2) modifies both "post-conviction review" and "other collateral review." *Rhine v. Boone*, 182 F.3d 1153, 1156 (10th Cir.1999), *cert. denied*, 528 U.S. 1084, 120 S.Ct. 808, 145 L.Ed.2d 681 (2000); *accord Ott v. Johnson*, 192 F.3d at 513 n. 10 (paraphrasing *Rhine* ). As explained by the court in *Rhine*, "A petition for writ of certiorari to the United States Supreme Court is simply not an application for state review of any kind; it is neither an application for state post-conviction review nor an application for other state collateral review." *Rhine v. Boone*, 182 F.3d at 1156.

Third, tolling the period during which a state petitioner could seek certiorari with the Supreme Court does nothing to further the underlying policy of section 2244(d)(2) which is to allow petitioners to exhaust state court remedies without the danger of having the limitations period to file a federal petition expire. "[E]xhaustion of state remedies, which is a prerequisite to federal habeas review, does not require a prisoner to seek certiorari review in the Supreme Court of the state court's denial

of [a] state collateral petition." *Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir.2000).

Consequently, the one year grace period is not tolled during the time petitioner could have sought certiorari review with the Supreme Court after the SJC denied his appeals on April 28, 1997, and October 27, 1999. The limitations period therefore expired on December 10, 1999. Unless this court considers the November 1999 attempted filing of the first petition as the filing date for this petition, the petition is untimely.

■ *Pro se* prisoners such as petitioner receive the benefit of the mailbox rule in determining the filing date of their section 2254 petitions under the AEDPA. *Morales–Rivera v. United States*, 184 F.3d 109, 109 (1st Cir.1999). The decision of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (applying mailbox rule to *pro se* prisoner's notice of appeal), constitutes the seminal case regarding application of the mailbox rule to *pro se* prisoner filings. The First Circuit in *Morales–Rivera* detailed the reasoning employed by the Supreme Court in *Houston* and the basis for pinpointing the filing date of a *pro se* prisoner's notice of appeal, initial filing of a section 2254 petition, and/or initial filing of a section 2255 motion as the date the prisoner deposits the filing in the prison's internal mail-system provided that the prisoner utilizes the prison's system for recording outgoing legal mail if such a system exists. *Morales–Rivera v. United States*, 184 F.3d at 110.

As explained in *Morales–Rivera*, the mailbox rule set forth in *Houston* fosters parity between *pro se* prisoners who must rely on prison authorities and the postal service to file their section 2254 petitions. *Morales–Rivera v. United States*, 184 F.3d at 110. Whereas a *pro se* prisoner has no

---

**17.** Circuit courts consistently interpret this language to mean that a judgment "becomes final upon the completion of certiorari proceedings in the United States Supreme Court, or, if certiorari was not sought, the expiration

of the time for filing such a petition." *Shatney v. Strange*, 1999 WL 391116 at * 2 (D.R.I. May 20, 1999); *accord Figueroa v. Wall*, 2000 WL 621103 at * 1 (D.R.I. April 27, 2000).

choice but to rely on prison authorities and the postal service, a non-incarcerated litigant can monitor the delivery of his filing and voluntarily choose to rely on the postal service for such delivery. *Houston v. Lack,* 487 U.S. at 271, 108 S.Ct. 2379 ("other litigants may choose to entrust their appeals to the vagaries of the mail ... but only the *pro se* prisoner is forced to do so by his situation").

■ The issue of whether a petitioner can benefit from the mailbox rule where, as here, he uses an incorrect street address to the correct court located in the same city is one of first impression in this circuit. *See Morales–Rivera v. United States,* 184 F.3d at 111 n. 4 (expressing no opinion but noting that the government is free to argue that an "original filing was not properly addressed due to the appellant's negligence"). Logically, the use of a correct address is within the *pro se* prisoner's control and, therefore, the reasoning of *Houston* does not fully support application of the mailbox rule to petitioner's circumstance.

On the other hand, petitioner had no choice but to rely on the postal service for sending the incorrectly addressed petition to the proper place. In addition, the mailbox rule in *Houston* is designed to avoid disputes about filing dates and the difficult question as to whether a delay by the postal service constituted excusable neglect. *See Houston v. Lack,* 487 U.S. at 275, 108 S.Ct. 2379 (relying on date of receipt raises "difficult to resolve questions as whether delay by the United States Postal Service constituted excusable neglect"); *Morales–Rivera v. United States,* 184 F.3d at 110 (mailbox rule depicted in *Houston* reflects pragmatic "need to discourage disputes about filing-dates"). Examining the circumstances of whether the postal service mistakenly failed to deliver

the first petition in November 1999 engenders a dispute which the mailbox rule in *Houston* is designed to avoid.

It is also significant that evidence in *Houston* suggested that Houston mistakenly used the post office box number for the Tennessee Supreme Court rather than the post office box number of the federal district court, both located in Jackson, Tennessee. *Houston v. Lack,* 487 U.S. at 268, 108 S.Ct. 2379. The Supreme Court, however, placed little, if any, emphasis on this mistake and proceeded to give Houston the benefit of the mailbox rule notwithstanding the possibility of an incorrect post office box number.

Furthermore, the mistake of using an incorrect post office box or an incorrect street address is not as severe as a mistake of addressing the filing to an incorrect court.[18] *See Scarpa v. Murphy,* 782 F.2d 300, 301 (1st Cir.1986) (finding no mistake by counsel in omitting number of street addressed to correct court and distinguishing Ninth Circuit case on basis that notice of appeal was sent to "the wrong court altogether"); *see also Hood v. Galaza,* 47 F.Supp.2d 1144, 1147 (S.D.Ca. 1999) (declining to apply section 2244(d)(2) tolling to petition sent to incorrect place of filing). Indeed, the First Circuit in *Scarpa* found it inconceivable that the Springfield Post Office would need the street number of the courthouse, "a building distinctly marked, and well known to the Springfield Post Office." *Scarpa v. Murphy,* 782 F.2d at 301.

In addition, petitioner successfully sent the November 12 letter to the Post Office Square address and received a reply from the court. The reply from the court listing lawyer referral services also contained the incorrect address. Hence, petitioner had little reason to know that the address was

---

**18.** Likewise, a *pro se* prisoner should not benefit from the mailbox rule where he addresses a notice of appeal to a friend to forward to the courthouse as opposed to the courthouse directly. *See Wilder v. Chairman of the Central Classification Board,* 926 F.2d 367, 370

(4th Cir.) (further noting that the plaintiff arguably had control over person to whom he addressed notice thereby rendering policy underlying *Houston* inapposite), *cert. denied,* 502 U.S. 832, 112 S.Ct. 109, 116 L.Ed.2d 78 (1991).

incorrect. He also acted diligently by sending a letter of inquiry to the clerk in February 2000.

Similar to the mistaken post office box number in *Houston,* petitioner's oversight does not deprive him of the benefit of the mailbox rule. Based on the present record, the petition is therefore timely and dismissal inappropriate.[19] Respondent is nevertheless free to argue at a later date that petitioner did not use MCI–Norfolk's system for recording legal mail provided that the prison maintains such a system or that petitioner did not deposit the first petition in MCI–Norfolk's internal mail system on or before December 9, 1999.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[20] that the motion for summary judgment (Docket Entry # 8) be **DENIED**. Respondent is **ORDERED** to file an answer on or before November 11, 2000. In light of this court's resolution of the motion for summary judgment, the deadline for filing dispositive motions is extended to November 11, 2000.

Oct. 11, 2000.

---

**19.** It is therefore not necessary to address petitioner's argument that equitable tolling should apply. Whether equitable tolling applies to section 2244(d) is an undecided issue in this circuit. *See Libby v. Magnusson,* 177 F.3d 43, 48–49 & n. 2 (1st Cir.1999). The doctrine is also reserved "for exceptional cases." *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 279 (1st Cir.1999).

**20.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).