Brendan M. MCGUINNESS, Petitioner,

v.

Peter PEPE, Respondent.

No. Civ.A. 00–11546–WGY.

United States District Court,
D. Massachusetts.

May 21, 2001.

Brendan M. McGuinness, South Walpole, MA, pro se.

Thomas W. Dee, Assistant Attorney General, Boston, MA, William J. Meade,

---

Assistant Attorney General, Criminal Bureau, Boston, MA, Peter Pepe, Cedar Junction, South Walpole, MA, for respondent.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

Where you start frequently influences where you come out. Faced with a petition for federal habeas corpus relief filed by state prisoner Brendan M. McGuinness ("McGuinness"), the Commonwealth here promptly moved to dismiss on the ground that the petition is time-barred by the rigid one-year statute of limitations on habeas corpus petitions found in the Antiterrorism and Effective Death Penalty Act[1] ("AEDPA").[2] Fair enough.

## I. THE COMMONWEALTH'S FLAGSHIP ARGUMENT

Recognizing that McGuinness is a "frequent litigant," *see* Order of August 26, 2000 [Docket No. 7], in both this Court and

the courts of the Commonwealth, and anticipating that he would seek to avail himself of the tolling provision found in 28 U.S.C § 2244(d)(2),[3] the Commonwealth extensively develops the argument that under the cited provision, when seeking postconviction relief, only the time spent in state courts—*not* federal—will toll the one-year statute of limitations. Resp't's Mem. at 6–16. This is an interesting issue and a hot one. The circuits are split. *Compare Jones v. Morton*, 195 F.3d 153, 158–59 (3d Cir.1999) (holding that tolling is afforded for various forms of *state* review only), *with Walker v. Artuz*, 208 F.3d 357, 359–60 (2d Cir.) (holding that the pendency of a *federal* habeas petition also tolls the statute), *cert. granted sub nom. Duncan v. Walker*, —— U.S. ——, 121 S.Ct. 480, 148 L.Ed.2d 454 (2000) (No. 00–121).[4]

### A. The First Circuit's (Non–) Stance on the Issue

In this district, Judge Lindsay confronted this issue—one of first impression in

---

1. Pub.L. No. 104–132, 110 Stat. 1214 (codified in scattered sections of 8, 18, 22, 40, and 42 U.S.C.).

2. 28 U.S.C. § 2244(d)(1) provides:

   A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

   *Id.; see also id.* § 2255 (establishing the same statute of limitations for persons in custody pursuant to the judgment of a federal court).

3. 28 U.S.C. § 2244(d)(2) provides:

   The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

   *Id.*

4. *Compare also Sperling v. White*, 30 F.Supp.2d 1246, 1250 (C.D.Cal.1998) ("[S]ection 2244[d][2] does not contemplate tolling limitations during time a habeas petition is pending in federal court."), *with Barrett v. Yearwood*, 63 F.Supp.2d 1245, 1250 (E.D.Cal. 1999) (observing that the phrase "other collateral review" would be meaningless if it did not refer to federal habeas petitions).

the First Circuit—in *Neverson v. Bissonnette*, No. 98–11719–RCL, 1999 WL 33301665 (D.Mass. Dec. 14, 1999) (unpublished decision), *appeal filed*, No. 00–1044 (1st Cir. Jan. 13, 2000). Neverson, whose conviction became final on October 25, 1993, *Neverson*, slip op. at 2, had a one-year grace period, running from the day after AEDPA's enactment, April 25, 1996,[5] during which to file his federal habeas petition. *Gaskins v. Duval*, 183 F.3d 8, 9 (1st Cir.1999); *Mayne v. Hall*, 122 F.Supp.2d 86, 90 (D.Mass.2000) (Stearns, J.) (adopting the report and recommendation of Magistrate Judge Bowler). Because Neverson did not file the habeas petition at issue until August 17, 1998, *Neverson*, slip op. at 2, it appeared untimely. But if the tolling provision of section 2244(d)(2) applied *both* while Neverson sought state post-conviction relief *and* during the time that an earlier habeas petition was pending in district court,[6] then Neverson was still within the one-year grace period when he filed his second habeas petition in 1998. *Id.* at 4.

After noting that no case in the First Circuit or the District of Massachusetts addresses whether AEDPA's tolling provision applies to the period during which a habeas petition is pending in federal court,

*id.*, Judge Lindsay followed the majority of courts to consider the issue and held that section 2244(d)(2) was not intended to toll the running of the limitations period during the pendency of a federal habeas petition, *id.* at 4–5 (citing *Jones*, 195 F.3d at 158–59; *Sperling v. White*, 30 F.Supp.2d 1246, 1250 [C.D.Cal.1998]). Although Judge Lindsay expressed some reservations about the *Sperling* court's plain language analysis, he stated that he was "persuaded by the court's reasoning that the design, structure, and purpose of AEDPA and the applications of traditional canons of statutory construction that § 2244(d)(2) does not toll the running of the limitations period during the pendency of a federal habeas petition." *Id.* at 5 (citing *Sperling*, 30 F.Supp.2d at 1251–53). Accordingly, Judge Lindsay adopted the holding of the *Sperling* court and granted the respondent's motion to dismiss the petition as untimely. *Id.* at 6. Because Neverson had raised issues not previously decided by the First Circuit, however, Judge Lindsay issued a certificate of appealability. *Id.* at 6–7.

On November 9, 2000, a First Circuit panel heard argument in *Neverson* and *Delaney v. Matesanz*, No. 99–1972 (1st

---

**5.** Although AEDPA established a one-year limitation on the filing of petitions for federal habeas corpus review, courts have determined that for persons whose state convictions became final before the passage of AEDPA, the one-year statute of limitations begins to run on the day after AEDPA's enactment, April 25, 1996, rather than the date on which the prisoner's conviction became final. *Gaskins v. Duval*, 183 F.3d 8, 9 (1st Cir.1999).

Such a judicially created grace period is compelled because otherwise application of the new AEDPA limitation period would "wholly eliminate claims for substantive rights or remedial actions considered timely" under the old habeas corpus law. *Rogers v. United States*, 180 F.3d 349, 354 (1st Cir. 1999), *cert. denied*, 528 U.S. 1126, 120 S.Ct. 958, 145 L.Ed.2d 831 (2000). "The legisla-

ture cannot extinguish an existing cause of action by enacting a new limitation period without first providing a reasonable time after the effective date of the new limitation period in which to initiate the action." *Id.* (citing *Block v. North Dakota*, 461 U.S. 273, 286 n. 23, 103 S.Ct. 1811, 75 L.Ed.2d 840 [1983]["[S]tatutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action."] [internal quotation marks omitted]).

**6.** Neverson first sought habeas corpus relief in the District of Massachusetts on August 28, 1996. This petition was dismissed without prejudice, however, for failure to exhaust state remedies. *Neverson*, slip op. at 2.

Cir. filed Aug. 24, 1999), a case presenting the same issue. On November 13, 2000, the United States Supreme Court granted certiorari to review the decision of the Second Circuit in *Walker v. Artuz.*[7] Stating that "[t]he question to be considered by the [Supreme] Court is likely decisive," *see Neverson v. Bissonnette,* No. 00–1044 (1st Cir. Nov. 15, 2000) (unpublished order), the First Circuit has now stayed all proceedings in *Neverson* and *Delaney* pending the Supreme Court's decision in *Walker.*[8]

### B. The Heart of the Matter

Having extensively developed—through consideration of the plain language, legislative history, and objectives of AEDPA, as well as discussion of the traditional canons of statutory construction and a pointed attack on *Walker*—its position that federal post-conviction proceedings do not toll the statute of limitations (and having used up most of its twenty page brief doing so, *see* Local Rule 7.1[B][4] [imposing a twenty-page limitation on briefs and memoranda] ), the Commonwealth concludes by saying that McGuinness loses even if the time devoted to *both* state and federal post-conviction proceedings is excluded from the running of the one-year statute of limitations. Resp't's Mem. at 16–17.

Wait a minute. Why didn't you say so in the first place? If that's true, then this Court need not consider the issue currently before the Supreme Court. Indeed, it would be an improper advisory opinion for this Court to do so. U.S. Const. art. 3,

§ 2, cl. 1; *see also Giese v. Pierce Chem. Co.,* 43 F.Supp.2d 98, 111 (D.Mass.1999) (distinguishing a justiciable case from an advisory opinion). Accordingly, it is first advisable to recount the procedural history of this case in some detail on the assumption that McGuinness's post-conviction proceedings in both state *and* federal court toll the running of the one-year statute of limitations.

## II. PROCEDURAL HISTORY

### A. Background

#### 1. McGuinness's Plea and Sentencing

On June 26, 1990, McGuinness pled guilty in the Massachusetts Superior Court sitting in and for the County of Norfolk to the charge of armed robbery. *McGuinness v. Commonwealth,* 420 Mass. 495, 495, 650 N.E.2d 780 (1995) ("*McGuinness I*"). The trial justice accepted McGuinness's guilty plea and sentenced him to twenty years incarceration. *Id.* Under this sentence, McGuinness would become eligible for parole after two years. *Commonwealth v. McGuinness,* 421 Mass. 472, 473, 658 N.E.2d 150 (1995) ("*McGuinness II*").

McGuinness claims that this "plea was legally and realistically involuntary because it was induced by a judge's promise to .release him after serving two ... years of his sentence via a motion to revise and revoke if the Parole Board did not set him free, so long as he was on good behavior while incarcerated."[9] Pet'r's Mem. at 2.

---

7. 208 F.3d 357 (2d Cir.), *cert. granted sub nom. Duncan v. Walker,* —— U.S. ——, 121 S.Ct. 480, 148 L.Ed.2d 454 (2000) (No. 00–121).

8. Although deferring decision until a higher court authoritatively decides an issue is sometimes a prudent use of judicial resources, it is questionable in the context of habeas proceedings, as a habeas petitioner who has, in

fact, been deprived of liberty unconstitutionally suffers irreparable injury enduring each day of wrongful incarceration. Perhaps the First Circuit is here signaling its view of the merits of Neverson's petition.

9. McGuinness's belief that the trial justice made this illegitimate promise to him appears to stem from the combined effect of comments made by his counsel during a lobby

McGuinness asserts that this promise was illegal because the law forbids any consideration of post-sentencing events, i.e., McGuinness's behavior while in prison, at a revise and revoke hearing held pursuant to Massachusetts Rule of Criminal Procedure 29 ("Rule 29").[10]

### 2. Rule 29 Motion to Revise and Revoke

On August 23, 1990, within the sixty-day time period established by Rule 29, McGuinness's counsel filed a motion to revise and revoke McGuinness's sentence. *McGuinness I*, 420 Mass. at 496, 650 N.E.2d 780. The motion remained dormant for two years, consistent with the trial justice's comments at sentencing.[11] *Id.*

Two years and two days after McGuinness was sentenced, on June 29, 1992, the trial justice allowed McGuinness's motion to revise and revoke without a hearing, suspending the remainder of his sentence. *McGuinness II*, 421 Mass. at 473, 658

N.E.2d 150. After the Commonwealth moved for reconsideration, the trial justice vacated the order, pending a hearing. *Id.* During this hearing, held on July 28, 1992, the trial justice heard the testimony of several probation officers, who stated that McGuinness had been guilty of multiple disciplinary offenses, including one inmate assault and three staff assaults. *Id.* At the close of the hearing, the trial justice granted the Commonwealth's motion to reconsider and denied McGuinness's motion to revise and revoke. *Id.*

### 3. Petition for Extraordinary Relief

McGuinness immediately moved for reconsideration of the order denying his motion to revise and revoke, but this motion was denied. *Id.* On June 6, 1994, McGuinness petitioned the Massachusetts Supreme Judicial Court for extraordinary relief. *See* Mass.Gen.Laws ch. 211, § 3. A single justice of the Supreme Judicial Court denied McGuinness's petition, and in

conference that took place before his plea was entered and the statements of the trial justice after his sentencing. During the lobby conference, McGuinness's counsel allegedly asked the trial justice to revise and revoke the sentence after a period of two years—when McGuinness would become eligible for parole—with the understanding that, were he not paroled because of bad behavior, the motion probably would not be allowed. *McGuinness II*, 421 Mass. at 474, 658 N.E.2d 150.

After the sentencing, the trial justice stated that he would consider a motion to revise and revoke after two years. The trial justice observed that "it is my intention that [McGuinness] serve two years and that the balance be suspended and he be placed on probation." *Id.* The docket reflected that the judge would entertain a motion to revise and revoke if McGuinness was on good behavior. *Id.* The intentions expressed by the trial justice, of course, precisely mirror the requests of McGuinness's counsel during the lobby conference.

Taken together, McGuinness believes that these statements prove that the trial justice made an impermissible promise to him *before* his plea was entered, that the promise was unfulfillable, and that the resulting plea is void. Pet'r's Mem. at 2.

**10.** Rule 29 provides:

The trial judge upon his own motion or the written motion of a defendant filed within sixty days after the imposition of a sentence ... may, upon such terms and conditions as he shall order, revise, or revoke such sentence if it appears that justice may not have been done.
*Id.*

**11.** Rule 29 requires that a motion to revise or revoke must be filed within sixty days of the imposition of sentence, but once the motion is filed, a judge may act on it at any time. *McGuinness I*, 420 Mass. at 496 n. 2, 650 N.E.2d 780 (citing Mass.R.Crim.P. 29[a] reporters' notes).

*McGuinness I*, the Supreme Judicial Court affirmed the judgment of the single justice because McGuinness had failed to demonstrate that the alleged errors could not be remedied under the ordinary review process. *McGuinness I*, 420 Mass. at 498, 650 N.E.2d 780; *McGuinness II*, 421 Mass. at 473–74, 658 N.E.2d 150.

### 4. Rule 30 Motion to Set Aside the Guilty Plea

After the Supreme Judicial Court affirmed the denial of his petition, McGuinness moved to withdraw his guilty plea and for a new trial in the Massachusetts Superior Court, pursuant to Massachusetts Rule of Criminal Procedure 30 ("Rule 30").[12] A justice of the Superior Court denied McGuinness's motion, and McGuinness filed a timely notice of appeal. *McGuinness II*, 421 Mass. at 474, 658 N.E.2d 150. On its own initiative, the Supreme Judicial Court then transferred McGuinness's Rule 30 appeal from the Appeals Court to itself. *Id.* In *McGuinness II*, the Supreme Judicial Court affirmed the denial of McGuinness's Rule 30 motion on the ground that the underlying sentence was not illegal and not predicated on post-conviction events. *Id.* at 475, 658 N.E.2d 150. The Supreme Judicial Court did not, however, address whether McGuinness's plea itself might have been involuntary because of McGuinness's belief—whether true or not—that there was a revise and revoke "deal" on the table when he pled guilty. *McGuinness v. Duval*, No. 94–11315–NG, slip op. at 6 (D.Mass. Mar. 31, 1997) (unpublished decision).

### B. McGuinness's First Petition for Federal Habeas Corpus Relief

In June 1994, the same month that McGuinness petitioned the Supreme Judicial Court for extraordinary relief on state law grounds, McGuinness filed his first habeas petition in the District of Massachusetts, challenging the constitutionality, under federal law, of his guilty plea, his sentence, and the denial of his revise and revoke motion. *Id.* at 1. Almost three years later, on March 31, 1997, Judge Gertner granted the respondent's motion to dismiss because McGuinness had not exhausted his claims in state court and had made no showing that the state corrective processes were either absent or ineffective. *Id.* at 11.

The potential effect of this initial habeas petition on AEDPA's one-year statute of limitations is marked. Because his conviction became final before the enactment of AEDPA, McGuinness's one-year statute of limitations would have begun to run on April 25, 1996 but for the filing of this initial habeas petition in 1994. If, however, the pendency of a federal habeas corpus petition *tolls* the statute of limitations, then McGuinness's statute of limitations was suspended until Judge Gertner dismissed his first petition on March 31, 1997. In other words, *on the assumption that McGuinness's federal post-conviction activity tolled the newly-enacted one-year statute of limitations, it commenced to run on April 1, 1997.*

### C. Return to State Court

After Judge Gertner dismissed his first petition, McGuinness set about exhausting

---

**12.** Rule 30 provides:

Whoever is imprisoned or restrained of his liberty pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or to correct the sentence which he is then serving upon the ground that his confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts.

*Id.*

his federal constitutional claims in state court. On August 5, 1997, McGuinness returned to state court and filed a second motion for new trial. Resp't's Mem. at 3. *This motion tolled the statute.* On January 13, 1998, a Superior Court justice issued a memorandum of decision declining to grant McGuinness's motion. *Id.* at 3–4. McGuinness filed a supplemental memorandum in support of his motion and a motion for reconsideration, but on February 11, 1998, the Superior Court justice again declined to grant McGuinness's motion. *Id.* at 4.

McGuinness noticed his appeal on February 23, 1998. *Id.* The Massachusetts Appeals Court affirmed the denial of McGuinness's second motion for new trial in an unpublished Rule 1:28 opinion on June 3, 1999. *See Commonwealth v. McGuinness,* 47 Mass.App.Ct. 1102, 713 N.E.2d 404 (1999) (table). On July 26, 1999, the Supreme Judicial Court denied McGuinness's petition for further appellate review. *See Commonwealth v. McGuinness,* 430 Mass. 1104, 714 N.E.2d 825 (1999) (table). *The statute of limitations again began to run.*

### D. McGuinness's Second and Third Petitions for Federal Habeas Corpus Relief

Having exhausted the claims presented in his first habeas petition, McGuinness filed his second habeas corpus petition in this Court on September 8, 1999. *McGuinness v. Marshall,* No. 99–11882–WGY. This petition was the same as his first, save that it added a claim for ineffective assistance of counsel. Because McGuinness had not exhausted the new ineffective assistance of counsel claim, his

second petition was summarily dismissed by this Court on October 15, 1999. *Id.* [Docket No. 1] ("This petition is summarily dismissed for non-exhaustion. It now appears that petitioner complains of ineffective assistance of counsel. This issue has never been presented to the courts of the Commonwealth."). *Again the statute of limitations began to run.*

During the pendency of his second petition, however, McGuinness had been placed on parole from his state sentence. As is frequently the case, freedom sharply diminished McGuinness's concern with the outcome of his federal proceeding, and he provided no forwarding address when he left prison. Thus, when the clerk properly mailed notice to McGuinness that his second petition had been denied, the notice went to the prison and never caught up with McGuinness.

The story does not end here. Apparently McGuinness violated the terms of his parole and was back in state custody by April 2000. Again in prison, with time hanging heavy on his hands, McGuinness began to inquire about the status of his pending (or so he thought) federal habeas proceeding. Once he learned that his petition had been dismissed the preceding October, McGuinness promptly filed the present habeas petition, his third, on May 19, 2000. *This stopped the statutory clock.*

## III. ANALYSIS

### A. Timeliness

■■■ Is McGuinness too late? Consider—the total number of days the statute was running, i.e., when no post-conviction proceeding was pending[13] in either state or federal court, exceeds one year:

---

**13.** Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute

of limitations begins to run. *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.) (per curiam), *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000).

April 1, 1997 to August 5, 1997 (127 days)

July 27, 1999 to September 8, 1999 (44 days)

October 16, 1999 to May 19, 2000 (217 days)

for a total of 388 tolled days. It looks like McGuinness has played out his string.[14]

## B. The Real Issue

Or has he?

■ McGuinness avers that he was unaware that his second habeas petition had been dismissed by this Court because he was on parole and had no notice of the dismissal. In essence, McGuinness argues that this Court should exercise its equitable powers to excuse his delay in filing his third federal habeas petition, Pet'r's Opp'n at 3–4, perhaps by further tolling the time that elapsed between this Court's dismissal of his second petition and McGuinness's notice thereof. Unfortunately, the Commonwealth, having nailed its flag to a non-issue in this case, has no space remaining in its brief to assist the Court with the real issue.

■ The First Circuit has expressly stated that it has no explicit position on whether equity can toll AEDPA's one-year limitation, *see Libby v. Magnusson*, 177 F.3d 43, 48 n. 2 (1st Cir.1999), but assuming equitable tolling is possible, *see Dunlap v. United States*, 250 F.3d 1001, 1004 n. 1 (6th Cir.2001) (collecting cases allowing tolling), it is the exception, not the rule.[15] At a bare minimum, McGuinness must show that he exercised due diligence throughout the period that he seeks to toll. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & n. 3, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

The decision of the Sixth Circuit in *Edwards v. Miller*, 972 F.2d 346, 1992 WL 198528 (6th Cir. Aug.18, 1992) (unpublished table decision),[16] is instructive in

---

A post-conviction motion is considered to be "pending" for the purposes of AEDPA's tolling provision from the time the motion is first filed until the time a final decision on the merits is rendered, including the time that the motion is pending on appeal. *Swartz v. Meyers*, 204 F.3d 417, 421 (3d Cir.2000).

**14.** Interestingly, Judge Gertner apprised McGuinness of the risk of running out the statute of limitations in a footnote to her March 31, 1997 order. *See McGuinness v. Duval*, slip op. at 10 n. 2 ("Should [McGuinness] be in a position to file another habeas petition in this Court after exhausting his state remedies, [he] will have to be attentive to the new federal habeas deadlines.").

**15.** The test for equitable tolling under AEDPA varies among the circuits. Most circuits use the "rare and exceptional circumstances" or "extraordinary circumstances" test. *See Dunlap*, 250 F.3d at 1007–10 (collecting cases); *Turner v. Johnson*, 177 F.3d 390, 391–92 (5th Cir.) (per curiam) ("rare and exceptional circumstances"), *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999).

The Sixth Circuit, however, considers five factors: (i) the petitioner's lack of notice of the filing requirement, (ii) the petitioner's lack of constructive knowledge of the filing requirement, (iii) diligence in pursuing one's rights, (iv) absence of prejudice to the respondent, and (v) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap*, 250 F.3d at 1008–09 (citing *Andrews v. Orr*, 851 F.2d 146 [6th Cir.1988]). The First Circuit has not addressed equitable tolling in the context of AEDPA, but its test for equitable tolling in general has been somewhere between the "exceptional circumstances" test and the five-factor test. *Compare Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 279 (1st Cir.1999) ("exceptional circumstances"), *with Jobe v. INS*, 238 F.3d 96, 100 (1st Cir.2001) (en banc) (five-factor test), *and Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 752 (1st Cir .1988) (citing *Andrews*, 851 F.2d at 151).

**16.** For the propriety of citing an unpublished decision, see *Anastasoff v. United States*, 223 F.3d 898, 899–905 (8th Cir.) (R. Arnold, J.) (holding that unpublished opinions have prec-

evaluating McGuinness's diligence. In that case, Edwards left a forwarding address with prison authorities when he was released on parole two days after filing a complaint in the district court. *Id.* When the court issued an order in the case, prison officials returned it to the court, incorrectly indicating that Edwards had not left a forwarding address. *Id.* The district court dismissed the complaint for failure to leave a forwarding address. *Id.*

Edwards subsequently filed an action contending that he did not receive notice of the dismissal of his complaint until over a month later because of the prison officials' failure to forward mail to his new address after he was paroled. *Id.* The Sixth Circuit reinstated the original complaint because "[t]hrough no fault of his own, [Edwards] was not afforded notice of the actions taken by the district court following the submission of his complaint. Likewise, the district court was given incorrect information that appellant had left no forwarding address." *Id.*

In contrast to the instant case, Edwards was able to demonstrate due diligence. Edwards made repeated and concerted efforts to rectify the forwarding problem and to notify both the prison and the district court that he was not receiving his forwarded mail. *Id.* McGuinness, on the other hand, did not even take the fundamental step of leaving a forwarding address with the prison. Nor did he contact the district court to determine the status of his petition until after he was returned to state custody in April 2000. With these considerations in mind, this Court cannot say that McGuinness exercised due diligence. *Compare Pryor v. U.S. Postal Serv.,* 769 F.2d 281, 287 (5th Cir.1985) (asserting that a party has a duty of diligence to inquire about the status of his case), *and Plowden v. Romine,* 78 F.Supp.2d 115, 119 (E.D.N.Y.1999) (stating that the petitioner could not demonstrate reasonable diligence where he allowed seventeen months to elapse before inquiring into the status of his post-conviction motion), *and United States v. Finley,* 181 F.R.D. 327, 329 (W.D.Va.1998) (refusing to toll AEDPA's statute of limitations on the basis of an earlier petition that had been dismissed because the petitioner had left prison without leaving a forwarding address), *appeal dismissed,* 172 F.3d 864 (4th Cir.1999), *with Reynolds v. Cambra,* 136 F.Supp.2d 1071, 1077–78 (C.D.Cal. 2001) (holding that a petitioner who *complied with all of the prison's mail procedures* was not further required to send letters to the court inquiring about the status of his case in order to demonstrate due diligence).

Absent a showing of due diligence, equitable tolling is not appropriate. Accordingly, the number of days left untolled by McGuinness's inaction—a total of 388 days—exceeds one year, and thus the petition is untimely. 28 U.S.C. § 2244(d).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Commonwealth's motion to dismiss [Docket No. 13].

---

edential effect), *vacated as moot,* 235 F.3d 1054 (8th Cir.2000) (en banc), *Giese,* 43 F.Supp.2d at 103 (relying on unpublished opinions' persuasive authority), and Richard S. Arnold, *Unpublished Opinions: A Comment,* 1 J.App.Prac. & Process 219 (1999). For an example of the silliness these non-citation rules cause, see *Sorchini v. City of Covina,* 250 F.3d 706 (9th Cir.2001) (per curiam) (2–1 decision).