**Gerald R. CARON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CIV.A. 01–10588–WGY.

United States District Court, D. Massachusetts.

Oct. 31, 2001.

Gerald R. Caron, F.C.I. Raybrook, Ray Brook, NY, pro se.

Brian T. Kelly, United States Attorney's Office, Boston, MA, for Brian T. Kelly.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The petitioner, Gerald R. Caron ("Caron"), moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence for various firearms offenses in violation of 18 U.S.C. § 922(g)(1). Under the authority accorded by Rule 4 of the Rules Governing Section 2255 Proceedings, this Court previously dismissed *sua sponte* seven of the eight grounds upon which Caron seeks relief as either fully explored and resolved in previous appellate proceedings or frivolous. Endorsed Order of Apr. 23, 2001 [Docket No. 1]. With respect to Caron's remaining claim, the Court stated: "The sole issue that requires a response is the contention that state charges later dropped for insufficiency of the evidence were used to enhance petitioner's sentence beyond the indicated statutory maximum. As to that issue, the government must respond." *Id.* The Court addresses this issue now.

### I.  Background

On February 10, 1994, a federal grand jury indicted Caron for various violations of 18 U.S.C. § 922(g)(1),[1] based on Caron's possession of firearms and ammunition after previously having been convicted of a felony. In July 1994, a jury found Caron guilty of four counts of being a felon in possession. At Caron's sentencing in September 1994, the Court concluded that Caron was an armed career criminal pursuant to 18 U.S.C. § 924(e)(1), which states:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years
> . . . .

*Id.* Caron's predicate felony convictions consisted of three Massachusetts convictions for crimes involving breaking and entering, a California conviction for attempted murder, and three federal firearms convictions arising out of a single incident. 941 F.Supp. 238, 240 n. 3 (D.Mass.1996). Accordingly, the Court sentenced Caron to a term of imprisonment of twenty-one years, ten months, plus a five-year term of supervised release. 9/19/94 Disposition Tr. at 20–22; *see also* U.S. Sentencing Guidelines Manual [hereinafter U.S.S.G.] § 4B1.4(b)(3)(A)-(c)(2); *id.* ch. 5, pt. A (sentencing table).

On appeal, Caron claimed that his Massachusetts convictions should not have been counted by this Court as predicate crimes under the definition set forth in 18 U.S.C. § 921(a)(20)[2] because his civil

---

**1.**  18 U.S.C. § 922(g)(1) states that it is unlawful for any person
> who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

*Id.*

**2.**  Pursuant to this section, "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall *not* be considered a conviction for purposes of [the firearms statutes, including 18 U.S.C. § 922(g)(1)], *unless* such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive

rights had been restored by operation of Massachusetts law. The First Circuit affirmed Caron's conviction, 64 F.3d 713 (1st Cir.1995), but granted a limited rehearing en banc, *id.* at 719, to determine whether civil rights can be restored under section 921(a)(20) by operation of law, or merely by offender-specific action, 77 F.3d 1, 2 (1st Cir.1996) (en banc). Reversing its earlier decision in *United States v. Ramos,* 961 F.2d 1003 (1st Cir.1992), the en banc court held that civil rights may be restored within the meaning of 18 U.S.C. § 921(a)(20) by laws of general or automatic application, 77 F.3d at 4. The First Circuit then remanded the case to this Court for resentencing in accordance with its opinion. The Supreme Court denied certiorari. 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1085 (1996).

On remand, the Court considered whether Caron's Massachusetts convictions might nevertheless count as predicate crimes under section 921(a)(20), despite the substantial restoration of Caron's civil rights. 941 F.Supp. at 247. The Court noted that if Massachusetts law "expressly provides that [Caron] may not ship, transport, possess, or receive firearms," *id.* (quoting 18 U.S.C. § 921(a)(20)), then Caron's prior felony convictions would constitute predicate crimes and he would be subject to sentencing as an armed career criminal pursuant to section 924(e)(1). After careful consideration, the Court determined that because, under Massachusetts law, Caron could keep and carry rifles and shotguns,[3] the specific weapons at issue in Caron's case, "Massachusetts has not sufficiently proscribed Caron's association with firearms such that he may be sentenced as

an armed career criminal in federal court." *Id.* at 252. Therefore, the Court sentenced Caron to a term of imprisonment of ten years, plus a three-year term of supervised release. *Id.* at 256.

On appeal by the government, the First Circuit reversed in an unpublished order, stating that because Caron remained subject to significant firearms restrictions—namely, restrictions on possessing handguns outside his home or business—his Massachusetts convictions could be counted as predicate crimes and he ought to have been resentenced as an armed career criminal. Nos. 96–2338, 96–2339 (1st Cir. May 9, 1997) (unpublished order).

The Supreme Court granted certiorari. 522 U.S. 1038, 118 S.Ct. 680, 139 L.Ed.2d 628 (1998). The Supreme Court determined that the portion of section 921(a)(20) that states that a previous conviction is not a predicate for sentence enhancement if an offender has had his civil rights restored, "unless such ... restoration of civil rights expressly provides that the person may not ... possess ... firearms," mandates a uniform approach. According to this approach, "[e]ither the [Massachusetts] restorations [of civil rights] forbade possession of 'firearms' and the convictions count for all purposes, or they did not and the convictions count not at all." 524 U.S. 308, 314, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998). The Supreme Court concluded that the phrase "may not ... possess ... firearms" in section 921(a)(20) includes partial restrictions on possession of one or more types of firearms, such as Massachusetts' restriction on handguns. Thus, the Supreme Court affirmed the First Circuit,

---

firearms." 18 U.S.C. § 921(a)(20) (emphasis added).

**3.** Under Massachusetts law, Caron could possess rifles and shotguns because he had obtained the necessary firearms permit and his

felony convictions were more than five years old. Mass. Gen. Laws ch. 140, §§ 123, 129B, 129C. He could not, however, possess handguns outside his home or business. *Id.* §§ 121, 131; *id.* ch. 269, § 10.

holding that because Massachusetts had not fully restored Caron's right to possess handguns, a right accorded by the state to law-abiding citizens, Caron's Massachusetts convictions were predicate crimes under 18 U.S.C. § 921(a)(20). 524 U.S. at 316–17, 118 S.Ct. 2007.

In light of the Supreme Court's opinion, the First Circuit dismissed Caron's appeal and again vacated the judgment and remanded the case to this Court for resentencing. On April 20, 1999, the Court sentenced Caron to a term of twenty-one years, ten months imprisonment, to be followed by a five-year term of supervised release.

Caron appealed, attacking the Court's denial of a downward departure for substantial post-sentence rehabilitation. The First Circuit concluded that this Court's refusal to grant a downward departure was consistent with *United States v. Bradstreet*, 207 F.3d 76 (1st Cir.2000), which stated that a departure is permissible based on post-sentence rehabilitation only if the achievement is present "to such an exceptional degree that the situation cannot be considered typical of those circumstances in which the explicit departure— rehabilitation in the context of acceptance of responsibility—is normally granted," *id.* at 83. The First Circuit therefore declined to review this Court's refusal to depart, absent a mistake of law, and affirmed Caron's sentence. 208 F.3d 321, 323 (1st Cir.2000).

## II. Analysis

### A. *Timeliness under 28 U.S.C. § 2255*

■ This Court must first assess whether Caron's petition, filed on April 9, 2001, is timely under section 2255's one-year statute of limitations. The question for this Court is whether April 9, 2001 fell within one year of "the date on which [Caron's] judgment of conviction [became] final." 28 U.S.C. § 2255(1).

There is some disagreement in the federal courts as to what date constitutes the date that a judgment of conviction becomes final where, as here, the defendant opted not to petition the Supreme Court for a writ of certiorari after his conviction was affirmed in the court of appeals. The Third, Fifth, Ninth, and Tenth Circuits have held that a conviction becomes "final" when the ninety-day period for seeking certiorari expires, *United States v. Garcia*, 210 F.3d 1058, 1060 (9th Cir.2000); *United States v. Gamble*, 208 F.3d 536, 536 (5th Cir.2000) (per curiam); *United States v. Burch*, 202 F.3d 1274, 1276 (10th Cir.2000); *Kapral v. United States*, 166 F.3d 565, 570 (3d Cir.1999), while the Fourth and Seventh Circuits have held that a conviction becomes final when the court of appeals issues its mandate denying the appeal, *United States v. Torres*, 211 F.3d 836, 839 (4th Cir.2000); *Gendron v. United States*, 154 F.3d 672, 674 (7th Cir.1998) (per curiam).

Although the First Circuit has not yet taken a clear stance on this issue, *Trenkler v. United States*, 268 F.3d 16, 21–22 n. 5 (1st Cir.2001), it appears to favor the approach enunciated by the Third, Fifth, Ninth, and Tenth Circuits. In *Rogers v. United States*, 180 F.3d 349 (1st Cir.1999), *cert. denied*, 528 U.S. 1126, 120 S.Ct. 958, 145 L.Ed.2d 831 (2000), the First Circuit held that a conviction becomes final when the Supreme Court denies an application for certiorari, *id.* at 352. Following *Rogers* to its logical conclusion, where a petitioner, such as Caron, does not seek certiorari, his conviction becomes final upon the expiration of the ninety-day period for filing a petition for certiorari. *See Mayne v. Hall*, 122 F.Supp.2d 86, 90 (D.Mass.2000) (Stearns, J.) (adopting the report and recommendation of Bowler, Mag.). Thus,

Caron's judgment of conviction became final on July 27, 2000, the date that his right to file a petition for certiorari with the Supreme Court expired, and the instant petition, filed on April 9, 2001, is timely.[4]

### B. *Caron's Claims under Apprendi v. New Jersey*

In his eighth asserted ground for habeas relief, Caron argues that the sentence imposed by this Court on April 20, 1999 violated his constitutional rights because the Court added four points to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(5)[5] for using one of the weapons at issue in the case in connection with another felony offense. Caron argues that because this felony charge was dismissed by the state trial court for insufficiency of the evidence and was never determined by a jury beyond a reasonable doubt, it should not have been used to enhance his sentence under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *id.* at 490, 120 S.Ct. 2348. Pet'r's Mem. at 7, 11.

■ Since Caron's judgment of conviction became final on July 27, 2000, one month after the Supreme Court issued its decision in *Apprendi*, this Court need not determine whether the rule enunciated in *Apprendi* is applicable retroactively to an initial habeas petition. The Court notes, however, that, absent narrow exceptions, new constitutional rules of criminal procedure are generally not applicable to cases that became final before the new rules were announced. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (O'Connor, J., plurality opinion as to parts IV and V, joined by Rehnquist, C.J., and Scalia and Kennedy, JJ.). Moreover, three circuit courts have held, under *Teague*, that *Apprendi* is not retroactively applicable to an initial habeas corpus petition. *United States v. Moss*, 252 F.3d 993, 997 (8th Cir.2001); *United States v. Sanders*, 247 F.3d 139, 150–51 (4th Cir.2001); *Jones v. Smith*, 231 F.3d 1227, 1237–38 (9th Cir.2000). *But see also Jarrett v. United States*, 266 F.3d 789, 791 (8th Cir. 2001) (questioning *Moss*'s holding, but noting that "[o]ne panel may not overrule another"); *Dukes v. United States*, 255 F.3d 912, 913–14 (8th Cir.2001) (same). Thus, if Caron's judgment of conviction in fact became final on April 28, 2000, when the First Circuit issued its mandate, then this Court would likely be barred from considering the substance of Caron's *Apprendi* argument. The Court need not conclusively decide such procedural nice-

---

**4.** Even if Caron's conviction is treated as having become final on April 28, 2000, the date that the First Circuit issued its mandate, his motion was filed within the one-year period specified in section 2255(1) and is timely. The foregoing discussion is not without importance, however, because the determination that Caron's conviction became final on July 27, 2000 is the basis for the Court's retroactivity decision. *See infra* part II.B.

**5.** This section provides:

> If the defendant used or possessed any firearm or ammunition in connection with an-

other felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

U.S.S.G. § 2K2.1(b)(5). The Court applied this section to enhance Caron's sentence by four levels upon finding by a preponderance of the evidence that Caron used one of the weapons—a semi-automatic rifle—in connection with another felony offense—a burglary.

ties, however, because Caron's claim fails on its merits.

■ Caron's base offense level was fourteen. U.S.S.G. § 2K2.1(a)(6). The Court added two levels because of the number of firearms involved, *id.* § 2K2.1(b)(1)(B), and an additional four levels because one of the firearms was used in connection with another felony, *id.* § 2K2.1(b)(5), for an adjusted offense level of twenty. 9/19/94 Disposition Tr. at 3. Caron fell into criminal history category II. *Id.* at 9. Thus, the Court's four-level enhancement increased Caron's potential sentence, before the application of the armed career criminal statute, from 24–30 to 37–46 months. U.S.S.G. ch. 5, pt. A (sentencing table).

Once the Court held that Caron was subject to sentencing as an armed career criminal, Caron's offense level was determined by the greatest of: (1) the previously determined offense level—twenty, *id.* § 4B1.4(b)(1); (2) the offense level for career offenders, *id.* § 4B1.4(b)(2); (3) thirty-four, if the firearm was used in connection with a crime of violence or drug crime or of a type described in 26 U.S.C. § 5845(a), *id.* § 4B1.4(b)(3)(A); or (4) thirty-three, if not otherwise specified, *id.* § 4B1.4(b)(3)(B). Finding that Caron had used one of the firearms and the ammunition in connection with a crime of violence, this Court therefore applied an offense level of thirty-four and criminal history category VI, subjecting Caron to a potential sentence of 262 to 327 months. 9/19/94 Disposition Tr. at 17–18.

By its express terms, *Apprendi* only requires that facts, other than the fact of a prior conviction, that increase the penalty for a crime *beyond the prescribed statutory maximum* be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348. As an armed career criminal, Caron faced a statutory sentence ranging from a minimum of fifteen years to a maximum potential sentence of life imprisonment. *Custis v. United States*, 511 U.S. 485, 487, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (construing section 924(e) as raising "the penalty for possession of a firearm by a felon from a maximum of 10 years in prison to a mandatory minimum sentence of 15 years and a maximum of life in prison without parole"); *see also* U.S.S.G. §§ 4B1.1(A), 4B1.4(b)(2). Thus, while this Court's finding, by a preponderance of the evidence, that Caron had used one of the firearms at issue in connection with another felony offense subjected Caron to a four-point increase to his base offense level and to the risk of a lengthier sentence than he otherwise might have received, it was incapable of increasing his sentence beyond the prescribed statutory maximum of life imprisonment.[6] Accordingly, the factual determinations underlying this Court's offense-level calculation need not have been submitted to the jury for determination beyond a reasonable doubt. *United States v. Robinson*, 241 F.3d 115, 121 (1st Cir.) (holding that district courts may find various sentence-enhancing facts under a preponderance of the evidence standard, as long as these factual determinations do not result in a sentence that exceeds the prescribed statutory maximum for the defen-

---

6. Somewhat surprisingly, Caron does not argue that this Court's determination, under the guideline applicable to the sentencing of armed career criminals, that Caron had used one of the firearms and the ammunition in connection with a crime of violence, violated *Apprendi.* If he were to raise such an argu-ment, however, it would fail for the same reason that his argument under section 2K2.1(b)(5) fails—as an armed career criminal, Caron was subject to a maximum potential sentence of life imprisonment and *Apprendi* is inapplicable.

dant's crime), *cert. denied,* —— U.S. ——, 122 S.Ct. 130, —— L.Ed.2d —— (2001)

▇▇▇ Simply put, it is well-established, in this circuit and others, that "[n]o *Apprendi* violation occurs when the district court sentences a defendant below the default statutory maximum, even though [a fact], determined by the court under a preponderance-of-the-evidence standard, influences the length of the sentence imposed." *Id.* at 119 (citing *United States v. Caba,* 241 F.3d 98, 100–01 (1st Cir.2001); *United States v. Terry,* 240 F.3d 65, 73–74 (1st Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 1965, 149 L.Ed.2d 759 (2001); *United States v. Garcia,* 240 F.3d 180, 183–84 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2615, 150 L.Ed.2d 769 (2001); *United States v. Thompson,* 237 F.3d 1258, 1262–63 (10th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 1637, 149 L.Ed.2d 497 (2001); *United States v. Houle,* 237 F.3d 71, 79–80 (1st Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2234, 150 L.Ed.2d 224 (2001); *United States v. LaFreniere,* 236 F.3d 41, 50 (1st Cir.2001); *United States v. Baltas,* 236 F.3d 27, 41 (1st Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 1982, 149 L.Ed.2d 773 (2001); *United States v. Williams,* 235 F.3d 858, 863 (3d Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 49, —— L.Ed.2d —— (2001); *United States v. Kinter,* 235 F.3d 192, 202 (4th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001); *United States v. Gerrow,* 232 F.3d 831, 834–35 (11th Cir. 2000) (per curiam), *cert. denied,* —— U.S. ——, 122 S.Ct. 75, —— L.Ed.2d —— (2001); *United States v. Keith,* 230 F.3d 784, 787 (5th Cir.2000) (per curiam), *cert. denied,* 531 U.S. 1182, 121 S.Ct. 1163, 148 L.Ed.2d 1023 (2001); *Hernandez v. United States,* 226 F.3d 839, 841–42 (7th Cir.2000); *United States v. Aguayo–Delgado,* 220 F.3d 926, 933–34 (8th Cir.), *cert. denied,* 531 U.S. 1026, 121 S.Ct. 600, 148 L.Ed.2d

513 (2000)). *Apprendi* does not deprive district courts of their discretion to impose sentences within the range prescribed by statute. *See Apprendi,* 530 U.S. at 481–82, 120 S.Ct. 2348; *Caba,* 241 F.3d at 101 ("[E]ven after *Apprendi,* the existence *vel non* of sentencing factors that boost a defendant's sentence but do not trip a new statutory maximum remain grist for the district judge's mill under a preponderance-of-the-evidence standard.").

The statutory maximum for Caron's offense was life imprisonment. Because Caron's sentence of twenty-one years, ten months falls within this maximum, this Court's factual findings under the sentencing guidelines were incapable of improperly increasing his sentence under *Apprendi.* As the Seventh Circuit concisely stated in *Talbott v. Indiana,* 226 F.3d 866 (7th Cir. 2000), "when the statutory maximum is life imprisonment, *Apprendi* is beside the point," *id.* at 869.

Caron does not appear to argue that the fact of his previous convictions should have been submitted to the jury for determination beyond a reasonable doubt before this Court could sentence him as an armed career criminal, and such an argument would be fruitless. In *Apprendi,* the Supreme Court expressly declined to overrule *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that prior felony convictions are merely sentencing enhancements, rather than elements of the offense, and therefore need not be presented to a jury and proved beyond a reasonable doubt. *Almendarez–Torres,* 523 U.S. at 239, 243–44, 118 S.Ct. 1219; *see also Apprendi,* 530 U.S. at 489–90, 120 S.Ct. 2348. Moreover, *Apprendi* explicitly states that facts *"[o]ther than* the fact of a prior conviction," 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added), are to be submitted to a jury and determined beyond a

reasonable doubt. Thus, because this Court's sentence pursuant to 18 U.S.C. § 924(e)(1) was based solely on the fact of Caron's prior convictions, *Apprendi* is inapplicable. *E.g., Marshall v. United States,* No. 00–1801, 2001 WL 1085006, at *2 (1st Cir. Sept.10, 2001) (per curiam) (unpublished opinion) (observing that courts have rejected *Apprendi*-based challenges to enhancements under 18 U.S.C. § 924(e)) [7]; *United States v. Skidmore,*

**7.** For the propriety of citing an unpublished decision, see *Anastasoff v. United States,* 223 F.3d 898, 899–905 (8th Cir.) (R. Arnold, J.) (holding that unpublished opinions have precedential effect), *vacated as moot,* 235 F.3d 1054 (8th Cir.2000) (en banc), *Giese v. Pierce Chem. Co.,* 43 F.Supp.2d 98, 103 (D.Mass. 1999) (relying on unpublished opinions' persuasive authority), and Richard S. Arnold, *Unpublished Opinions: A Comment,* 1 J.App. Prac. & Process 219 (1999).

*McGuinness v. Pepe,* 150 F.Supp.2d 227, 234 & n. 16 (D.Mass.2001).

The footnote cited above seems to be assuming a strange life of its own. Reproducing it in full, Professor Colleen M. Barger concludes "[t]he chief judge of the District of Massachusetts seems determined to force the issue [of the propriety of citing unpublished opinions] in the First Circuit, as he has begun to routinely insert the [above] footnote in his opinions whenever he cites unpublished opinions to support his reasoning." Colleen M. Barger, Anastasoff, *Unpublished Opinions, and "No–Citation" Rules,* 3 J.App. Prac. & Process, 169, 170 & nn.4–5 (2001) (footnotes omitted) (citing *Suboh v. City of Revere,* 141 F.Supp.2d 124, 143 n. 18 (D.Mass.2001); *Berthoff v. United States,* 140 F.Supp.2d 50, 53 n. 4 (D.Mass.2001); *Musto v. Halter,* 135 F.Supp.2d 220, 232 n. 8 (D.Mass.2001); *Gonzalez v. United States,* 135 F.Supp.2d 112, 122 n. 10 (D.Mass.2001); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 126 F.Supp.2d 69, 136 n. 40 (D.Mass.2001), *appeal filed,* No. 01–1191 (Fed.Cir. Jan. 26, 2001); *MacNeill Eng'g Co. v. Trisport, Ltd.,* 126 F.Supp.2d 51, 58 n. 3 (D.Mass.2001); *Mass. Hous. Fin. Agency v. Evora,* 255 B.R. 336, 343 n. 3 (D.Mass.2000)); *see also Sys. Mgmt., Inc. v. Loiselle,* 91 F.Supp.2d 401, 410 n. 1 (D.Mass.2000) ("For the propriety of citing an unpublished Ninth Circuit opinion, see *Giese* ....").

Most recently, Judge Alex Kozinski, writing for the Ninth Circuit, also reproduced the above footnote in full as well as Professor Barger's conclusion concerning it. *Hart v. Massanari,* 266 F.3d 1155, 1158–60 n. 1 (9th Cir.2001) (holding constitutional the Ninth Circuit's no-citation rule, Local Rule 36–3,

which establishes that unpublished dispositions and orders are not binding precedent, except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel).

Since a "[determination] to force [an] issue" is not within the usual repertoire of a district court judge who bears an especial responsibility to act within the applicable procedural framework, and since I confess to using precisely the above footnote when writing decisions subject to review by the Federal Circuit, *Amgen,* 126 F.Supp.2d at 136 n. 40; *MacNeill,* 126 F.Supp.2d at 58 n. 3 (compare Federal Circuit Local Rule 47.6(b)), when sitting by designation within the Eleventh Circuit, *Bechtold v. Massanari,* 152 F.Supp.2d 1340, 1346 n. 6 (M.D.Fla.2001) (compare Eleventh Circuit Local Rule 36–2), and indeed within the Ninth Circuit itself, *Hogan v. Henderson,* 102 F.Supp.2d 1180, 1187 n. 6 (D.Ariz.2000) (compare Ninth Circuit Local Rule 36–3), *aff'd,* 15 Fed.Appx. 458, 2001 WL 823870 (9th Cir. Jul.20, 2001), a few words of explanation are in order.

As is frequently the case, an issue that may be of constitutional dimension is actually one of money. The federal judiciary is today and has been for some time a leading consumer of legal research materials, primarily published judicial opinions. As these opinions proliferate, legal research costs rise—including costs the judiciary itself must bear through expenditure of appropriated funds. Reducing the number of published decisions—so the reasoning goes—reduces (or at least slows the rise) of such costs.

The first official federal movement of national scope toward unpublished opinions occurred in 1964, when the Judicial Conference of the United States directed the judges of the courts of appeals and district courts to publish "only those opinions which are of general precedential value."

However, it was not until 1972 that the Judicial Conference requested each circuit to establish criteria to limit case publication. Eventually, each court of appeals created its own publication rules. The establishment of publication rules has proven to

254 F.3d 635, 641–42 (7th Cir.2001) (holding that an enhancement of a statutory

be a watershed event in the history of federal court case law. Prior to this time, all or very nearly all federal appellate court opinions in the United States were published in print. However, the publication rules have so systematically reduced the number of published opinions that currently more than 79 percent of federal circuit court opinions are unpublished.

Michael Hannon, *A Closer Look at Unpublished Opinions in the United States Courts of Appeals*, 3 J.App. Prac. & Process 199, 200 (2001) (footnotes omitted).

Ironically, citation rules have had no effect whatsoever on actual publication and the associated legal research costs. Lawbook publishers have simply gone ahead and published the so-called "unpublished" judicial decisions, noting them as such. Stephen L. Wasby, *Unpublished Decisions in the Federal Courts of Appeals: Making the Decision to Publish*, 3 J.App. Prac. & Process 325, 326 (2001) ("Now unpublished rulings can be found on Westlaw and LEXIS for all circuits except the Third, Fifth, and Eleventh."). Indeed, the lawbook publishers must relish the additional pages of decisions now being devoted to debating the propriety of the no-citation rules.

It is not the province of this Court to comment on the proffered rationales for the no-citation rules as advanced by courts of appeals, *see Hart*, 266 F.3d 1155, 1174–80, or individual judges of those courts, *see Giese*, 43 F.Supp.2d at 103 n. 1. Nor has this Court yet had occasion to confront the knotty issue (which no local rule may resolve) whether constitutionally an unpublished decision from a governing court of appeals constitutes a binding precedent. *Compare Anastasoff* 223 F.3d at 899–905, *with Hart*, 266 F.3d at 1180.

It suffices here simply to say that, at least within the First Circuit, I believe the no-citation rule has no application to judicial opinions. *Giese*, 43 F.Supp.2d at 103 n. 1.

More generally, I believe fundamentally that judges are society's teachers of the law. As Professor William Christianson has said, "[t]eaching is a very special kind of caring." In everything we do and say as judges, our society expects us to epitomize and articulate its most basic values. *See* William G. Young, *Reflections of a Trial Judge* 174 (MCLE, 1998) (describing the judge's role in society as that of teacher); William G. Young, John R. Pol-

lets & Christopher Poreda, 19 *Massachusetts Practice: Evidence* § 102.1, at 15–16 (1998) (same); *accord* Ronald A. Cass, *The Rule of Law in America* 74 (2001) ("The best view of judging in America, then, is not that judges are 'legislators in robes.' Rather, it is that judges act primarily as 'translators of law.' ").

Basic to the discharge of my judicial duty, therefore, is the duty to *explain* clearly, to teach *why* I am deciding as I do. *See* Pamela Ann Rymer, *The Trials of Judging*, 4 Green Bag 2d 57, 58 (2000) ("If truth is worth pursuing, it is worth explaining."); *see also* Robert E. Keeton, *Judging* 1 (1990) ("Judicial choice, at its best, is reasoned choice, candidly explained."). Where an unpublished decision persuades me and best explains the course of my own reasoning, I cite it. While the courts of appeal properly mull the precedential effect of their decisions on the development of the law, that aspect of no-citation rules is, thus far, of no moment to me. My citation means only that I find the readily available unpublished decision *persuasive*, just as I would had the same three appellate judges in my circuit (or the circuit within which I am sitting) collaborated in a published law review article. My citation, therefore, is an acknowledgment of such reasoning, a sign of respect to the authors, and an explanation to the public that I found such reasoning persuasive. It is only in this fashion that the common law can grow.

Finally, there is no genuine tension between district court decisions which cite "unpublished" appellate decisions and the local circuit "no-citation" rules. Unlike an attorney, under the Federal Rules of Civil and Criminal Procedure, I am expressly and properly *required* to state my reasoning. Fed.R.Civ.P. 52(a); Fed.R.Crim.P. 12(e), (g). I would violate these rules were I to fail to cite a source I actually used to inform my reasoning. Moreover, these nationally uniform rules adopted pursuant to the Rules Enabling Act, 28 U.S.C. §§ 2071–72, take precedence over any locally adopted rule, *id.; United States v. Claros*, 17 F.3d 1041, 1045 (7th Cir.1994) ("A local rule may not be inconsistent with the Constitution, a statute of the United States, or with a national rule governing the conduct of litigation in the United States courts.").

I'm not "taking on" anyone or any court. I regret Professor Barger thinks so.

maximum sentence based on 18 U.S.C. § 924(e) that results from prior convictions is governed by *Almendarez–Torres* rather than *Apprendi* ); *United States v. Thomas*, 242 F.3d 1028, 1034–35 (11th Cir.) (same), *cert. denied,* — U.S. ——, 121 S.Ct. 2616, 150 L.Ed.2d 770 (2001); *United States v. Dorris*, 236 F.3d 582, 587–88 (10th Cir.2000) (same), *cert. denied,* — U.S. ——, 121 S.Ct. 1635, 149 L.Ed.2d 495 (2001); *United States v. Mack*, 229 F.3d 226, 235 n. 12 (3d Cir.2000) (same), *cert. denied,* — U.S. ——, 121 S.Ct. 2015, 149 L.Ed.2d 1016 (2001); *Norton v. United States,* 119 F.Supp.2d 43, 46 n. 3 (D.Mass. 2000).

### III. Conclusion

For the foregoing reasons, Caron's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [Docket No. 1] is DENIED.